**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THE HANSEN FOUNDATION, INC.
et al.,

           Plaintiffs,

    v.

CITY OF ATLANTIC CITY,

           Defendant.

No. 1:19-cv-18608 (NLH/AMD)

**OPINION**

**APPEARANCES**:

JESSICA R. WITMER
KEITH ALAN DAVIS
NEHMAD PERILLO DAVIS & GOLDSTEIN, P.C.
4030 OCEAN HEIGHTS AVENUE
EGG HARBOR TOWNSHIP, NJ 08234

MATTHEW D. SYKES
STORZER & ASSOCIATES, P.C.
1025 CONNECTICUT AVE. NW
SUITE 1000
WASHINGTON, DC 20036

*Attorneys for Plaintiffs.*

JOHN J. MURPHY, III
STRADLEY, RONON, STEVENS & YOUNG, LLP
LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 100
CHERRY HILL, NJ 08002-2223

MARK DAVID VILLANUEVA
ROBERT J. NORCIA
STRADLEY RONON STEVENS & YOUNG, LLP
2005 MARKET STREET
SUITE 2600
PHILADELPHIA, PA 19103

*Attorneys for Defendant.*

**HILLMAN**, District Judge

The matter involves a dispute between a home-living facility for individuals dealing with drug and alcohol addiction and the City of Atlantic City over the City's enforcement of various zoning provisions of its City Code.  Plaintiffs challenge two separate provisions of the City Code, and allege a series of violations of federal, state, and constitutional law regarding these provisions and the actions taken by the City in the course of this dispute.  Currently pending before the Court are both parties' cross-motions for summary judgment.  For the reasons expressed below, both motions will be granted in part and denied in part.

**Background**

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a). Plaintiff Hansen House, LLC ("Hansen House") is a New Jersey limited liability corporation and subsidiary of Plaintiff Hansen Foundation, Inc., a nonprofit organization whose mission is to provide affordable, long-term, safe recovery residences, access to treatment, community programs, and the tools needed to lead healthy productive lives for people both new to and in long-term recovery.  Plaintiff Rienna Rebetje is a disabled individual in recovery from substance abuse, and a resident at the home at the center of this dispute.

In March 2019, Hansen House purchased a single-family home located at 16 South Tallahassee Avenue, Atlantic City, New Jersey.  Hansen House sought to make the property, which it named "Serenity House," available to women in recovery from alcoholism and substance abuse.  Serenity House is located within Atlantic City's R-2 Zoning District.

On March 7, 2019, the City notified Hansen House that it was in violation of City Ordinance § 194-1(B) requiring a certificate of occupancy prior to the establishment of a new occupation.  Over two months later, in May 2019, Hansen House moved residents of another of its homes to the Serenity House, which it alleges was necessary after the residential lease at the other home lapsed.  By Hansen House's admission, it did not obtain a certificate of occupancy before its residents moved into Serenity House.  (ECF No. 25-2 at ¶ 9).

In June 2019, Hansen House received a notice of a violation from the City's Department of Licensing & Inspections following an inspection of the house, because it had begun to install an H.V.A.C. system without first obtaining a construction permit as required by N.J.A.C. 5:23-2.16.  Accordingly, the City's Department of Licensing & Inspections issued a "stop work order" pursuant to N.J.A.C. 5:23-2.14.  Then, on July 10, counsel for Hansen House sent a letter to the City's Building and Subcode Official, Anthony Cox.  (ECF No. 1-1, Compl. Ex. F).  The letter

3

laid out arguments similar to those Plaintiffs would later make in this lawsuit.  Specifically, the letter asserted that Serenity House was properly classified as a "single-family residence," argued that if it were not, a "reasonable accommodation" in the form of a waiver or modification of the City's zoning ordinances and a corresponding certificate of occupancy must be granted, and stated that if the City did not permit Serenity House to operate as planned, the City faced liability from suit under federal anti-discrimination law.

It was not until July 15, 2019, almost two months after Hansen House moved residents into Serenity House without obtaining a certificate of occupancy and a few days after Plaintiffs sent the letter described above, that the City filed a municipal complaint against Serenity House for "failure to obtain an 'occupancy permit' before new occupancy occurred," in violation of City Code § 194-1B.  (ECF No. 1-1, Complaint Ex. G).  Plaintiffs responded to this complaint by submitting an application for a Certificate of Land Use Compliance ("CLUC") on July 18, which sought to register the house as a single family home.  Under the City Code, a CLUC is a prerequisite for certain forms of housing to receive a certificate of occupancy.

That same day, Plaintiffs received an order to vacate the Serenity House.  The order was sent by Dale Finch, Director of the City's Department of Licensing and Inspections, and stated

4

that it was based on both "a pattern of disregard for code requirements," and the "absolute prohibition against a community residence at this specific location" under City Code § 152-1. (ECF No. 1-1, Compl. Ex. J).  Section 152-1 governs  "(family) community residence[s]," which the provision makes clear is the City Code's term for "housing for persons with disabilities," and mandates that "[c]ommunity residences, except as required by state law, . . . be at least 660 linear feet in any direction from the closest existing community residence."  Plaintiffs have not been forced to actually vacate the residence.

The next day, July 19, 2019, Serenity House's CLUC application was denied by City Zoning Officer Barbara Woolley-Dixon.  The parties met to discuss the situation on August 16, at which meeting representatives for Hansen House were provided with the denied CLUC application.  (ECF No. 1-1, Compl. Ex. I). The application listed multiple procedural requirements for the CLUC form that had not been fulfilled, and also included a note stating that Serenity House was in violation of § 152-1's distance requirement; the parties dispute whether the procedural violations, or § 152-1, were the actual reason for the denial. At this meeting, the possibility of Serenity House being classified as a "group family household" was also discussed; while the parties' briefs further dispute which side made the suggestion, Plaintiffs' initial Statement of Undisputed Material

5

Facts acknowledges that "Ms. Hansen [] proposed to file another CLUC as a 'group family household' under City Code Section 163-66." (ECF No. 25-2 at ¶ 21).

Two weeks later, on July 30, Hansen House filed an appeal and a request for an interpretation of the City's zoning provisions with the City's Zoning Board of Adjustment. The filing appealed what they characterized as the City's denial of their CLUC because of a determination that Serenity House was a community residence governed by the distance requirement of § 152-1, argued that Serenity House was in fact a group family household under § 163-66, and alternatively requested an interpretation by the Zoning Board as to exactly what form of housing Serenity House constituted. (ECF No. 1-1, Compl. Ex. L).

At some point after submitting their appeal and request for an interpretation, Plaintiffs apparently realized that pursuant to § 163-66B, group family households are barred from the R-2 district that Serenity House is located in, and filed a supplement to their appeal on September 5. (ECF No. 1-1. Compl. Ex. M). That supplement again requested that the CLUC denial be overturned, arguing that the denial had occurred because of the City's determination that Serenity House was a community residence governed by § 152-1, and again argued that Serenity

House was and should be characterized as a single family home permitted in the R-2 district.

A few weeks later, on September 24, the Zoning Board sent Plaintiffs a letter regarding the deficiencies in their appeal and request for an interpretation.  (ECF No 1-1, Compl. Ex. N). The letter made clear that the Zoning Board was unable to review their application based purely on procedural grounds: Plaintiffs had failed to pay the filing fee and attach multiple documents providing information related to the ownership of the house as required under New Jersey law and the City Code.  It further explicitly stated that "the City lacks sufficient information to characterize the use of the property and takes no position on same."

Two days later, on September 26, 2019, Plaintiffs filed their complaint in the Superior Court of the State of New Jersey, Atlantic County.  (ECF No. 1-1).  The complaint asserts both facial challenges to Sections 152-1 and 163-66B, as well as a number of as-applied challenges and claims based on Defendant's actions throughout this process.  Specifically, the complaint brings claims under the following federal statutes: The Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et. seq. (Counts I-III); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et. seq. (Count IV); the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 791 et. seq. (Count V); 42 U.S.C. § 1983

(Count VI); the Fourteenth Amendment of the United States
Constitution (Count VII); the New Jersey Law Against
Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et. seq. (Count VIII);
and the New Jersey Civil Right Act ("NJCRA"), N.J.S.A. 10:6-1
et. seq. (Count IX).

On October 2, 2019, Defendant removed the case to this
Court. (ECF No. 1). On March 3, 2020, Plaintiffs filed a
motion for summary judgment on each of their claims. (ECF No.
25). Defendants responded by filing their own cross-motion for
summary judgment. (ECF No. 26). Finally, on June 29, 2020,
Plaintiffs filed a reply brief in further support of their
motion. (ECF No. 30).

## Discussion

### I.   Subject Matter Jurisdiction

The Court has original federal question jurisdiction over
Plaintiff's federal claims under 28 U.S.C. § 1331, and has
supplemental jurisdiction over the New Jersey state law claims
pursuant to 28 U.S.C. § 1367(a).

### II.  Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate where the Court is
satisfied that the materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations, admissions, or
interrogatory answers, demonstrate that there is no genuine

8

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).  If review of cross-motions for summary judgment reveals no genuine

9

issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### III. **Analysis**

Plaintiffs' Complaint attacks City Code Sections 152-1 and 163-66B, as well as the City's enforcement of those provisions and denial of Plaintiffs' CLUC application, through claims under both federal and state law.  Plaintiffs' claims can be broken down into two broad categories: facial attacks on the two provisions of the City Code, and as-applied claims based on Defendant's allegedly discriminatory denial of Plaintiffs' CLUC application and other actions.  As the parties' arguments regarding the separate claims largely divide along the lines of these two categories, the Court will address the claims in that manner.

### A. **Plaintiffs' Facial Challenges to City Code Sections 152-1 and 163-66B**

Plaintiffs allege a series of facial challenges to City Code Sections 152-1 and 163-66B based under the FHA, ADA, and RHA.  The FHA, which was enacted to bar housing discrimination on a number of fronts, was amended in 1988 by the Fair Housing Amendments Act ("FHAA") to extend its protections to "individuals with handicaps."  Specifically, The FHAA makes it

unlawful "to discriminate in the sale or rental, or to otherwise
make unavailable or deny, a dwelling to any buyer or renter
because of a handicap." 42 U.S.C. § 3604(f)(1); see Cmty. Servs.
v. Wind Gap Mun. Auth., 421 F.3d 170, 176 (3d Cir. 2005).  The
ADA and RHA both have similar provisions: the ADA states that
"no qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by an such
entity," 42 U.S.C. § 12132, while the RHA provides that "[n]o
otherwise qualified individual with a disability in the United
States ... shall, solely by reason of her or his disability, be
excluded from the participation in, be denied the benefits of,
or be subjected to discrimination under any program or activity
receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Since the requirements of the FHAA, ADA and Rehabilitation
Act are essentially the same, courts have concluded that the
FHAA analysis can be applied to ADA and Rehabilitation Act
claims as well in such cases where claims are brought under all
three statutes." Yates Real Estate, Inc. v. Plainfield Zoning
Board of Adjustment, 404 F. Supp. 3d 889, 914 (D.N.J. 2019)
(quoting In re Lapid Ventures, LLC, No. 10-6219 (WJM), 2011 WL
2429314, at *5 (D.N.J. June 13, 2011)).  "As a predicate to
success on any of these claims, a plaintiff must present a class

of protected individuals, i.e. handicapped individuals." Id.
(quoting 901 Ernston Rd., LLC v. Borough of Sayreville Zoning
Bd. of Adjustment, No. 18-2442, 2018 WL 2176175, at *5 (D.N.J.
May 11, 2018)).  Courts in this Circuit have held that drug and
alcohol addiction qualify as a handicap under these statutes,
and Defendant does not appear to dispute that this predicate
element has been satisfied.  901 Ernston Rd., LLC, 2018 WL
2176175 at *5.

     With that established, the Court turns to Plaintiffs'
actual claims.  A plaintiff can prove a violation of the FHA,
ADA, or RHA in one of three ways: "(1) a showing of disparate
treatment, or intentional discrimination; (2) a showing of
disparate impact; or (3) a showing of a refusal to make
reasonable accommodations." Yates Real Estate, 404 F. Supp. 3d
at 915 (citing 901 Ernston Rd., LLC, 2018 WL 2176175 at *5-6).
Plaintiff here has alleged all three forms.  Their disparate
treatment and disparate impact claims are properly categorized
as facial challenges, whereas their failure to provide a
reasonable accommodation claims are as-applied challenges based
on Defendant's actions during this dispute.  The Court will turn
first to Plaintiffs' facial challenges.

     **1. Plaintiffs' Disparate Treatment Claim**

     Plaintiffs first allege that City Code § 152-1 is an
example of disparate treatment, in that it facially

discriminates against individuals with disabilities in violation of the FHA, ADA, and RHA.  Defendant raises only one argument in opposition to Plaintiffs' motion for summary judgment and in support of its own cross-motion; as this argument is otherwise unrelated to Plaintiffs' arguments, the Court will start there.

Specifically, Defendant argues that summary judgment must be granted on Plaintiffs' claims regarding § 152-1 because the claims are moot, as the city has "promise[d] not to enforce Section 152-1's distance requirement against Hansen House or any other similarly situated individual or entity." (ECF No. 26-1 at 23).  Defendant states it initially advised Hansen House of this promise during a status conference before the Magistrate Judge assigned to this matter, and it supports it here with a declaration again stating that the provision will not be enforced.  Based on this promise, Defendant declares that "[t]here cannot be a finding of past, present, or future harm because the City's decision not to enforce this ordinance removes any possibility of harm to Hansen House or any other similarly situated individual or entity in the City."  Id.

In support of this argument, Defendant relies entirely on Tait v. City of Philadelphia, 410 F. App'x. 506, 509 (3d Cir. 2011), for the proposition that "[w]hen a government body promises not to enforce a restriction against a plaintiff, or at all, there is no longer 'a substantial threat of real harm'

13

because 'intervening events [have] remove[d] the possibility of harm." This, however, is not the standard for assessing mootness in cases like this — the quoted passage from <u>Tait</u> is a discussion of the standard for assessing ripeness, a similar yet separate doctrine the Court will address later in this Opinion.

Here, the central question is whether Defendant's promise not to enforce § 152-1 rendered an already-filed lawsuit moot. As the Third Circuit recently outlined, courts "are reluctant to declare a case moot [] when the defendant argues mootness because of some action it took unilaterally after the litigation began." <u>Hartnett v. Pennsylvania State Education Association</u>, 963 F.3d 301, 306 (3d Cir. 2020). Contrary to the more expansive standard claimed by Defendant, such "voluntary cessation" actions "will moot a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" <u>Fields v. Speaker of the Pa. House of Representatives</u>, 936 F.3d 142, 161 (3d Cir. 2019) (quoting <u>Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1</u>, 551 U.S. 701, 719 (2007)). Importantly, "[t]he party urging mootness bears the 'heavy burden' of showing that it will not 'revert to' its prior policy." <u>Id</u>. (quoting <u>Trinity Lutheran Church of Columbia, Inc. v. Comer</u>, 137 S. Ct. 2012, 2019 n.1, (2017)).

The Court finds that Defendant has not met this heavy burden.  Nor has it truly tried to; the only basis the City has given for why the Court should find Plaintiffs' claims moot is that they have promised not to enforce the provision in question.  That "promise," however, was made after litigation had already commenced, and Defendant makes no claim that it is in any way binding on the City.  Further, unlike cases in which courts have found that a voluntary cessation did render a claim moot, "there have been no subsequent events that make it absolutely clear that [Atlantic City] will not [resume enforcement of] the allegedly wrongful [provision] in the absence of the injunction."  DeJohn v. Temple University, 537 F.3d 301, 309 (3d Cir. 2008) (citing Los Angeles County v. Davis, 440 U.S. 625, 631 (1979)).  As Plaintiffs argue, there is simply no assurance here that Atlantic City will not attempt to enforce the provision again at a later date, either against Plaintiffs or another, similar party, and Defendant has pointed to nothing that would affirmatively stop them from doing so.

Defendant's "promise," on its own, is simply not enough to provide the Court with the "absolute" clarity it requires to find Plaintiffs' claim moot.  Instead, "[t]he timing of Defendant['s]" promise not to enforce § 152-1, after litigation had already begun, "as well as the ease by which Defendant[] could conceivably re-institute the ban, convince the Court that

the alleged injury could reasonably recur absent the requested relief." Cottrell v. Good Wheels, No. 08-1738 (RBK/KMW), 2009 WL 3208299, at *5 (D.N.J. Sept. 28, 2009).  Accordingly, the Court finds that Plaintiffs' claims as to § 152-1 are not moot, and will proceed to analyze Plaintiffs' arguments for summary judgment.

"Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a 'motivating factor' behind the challenged action." 431 East Palisade Avenue Real Estate, LLC v. City of Englewood, 977 F.3d 277, 284 (3d Cir. 2020) (quoting Cmty. Servs., Inc. v. Wind Gap Mun. Auth., 421 F.3d 170, 177 (3d Cir. 2005)).  However, "where a plaintiff demonstrates that the challenged action involves disparate treatment through explicit facial discrimination, or a facially discriminatory classification, a plaintiff need not prove the malice or discriminatory animus of a defendant," because "the focus is on the explicit terms of the discrimination." Id. at 284 (quoting Wind Gap, 421 F.3d at 177).

The Court easily finds that § 152-1 is explicitly discriminatory.  The specific provision in question here, 152-1(f), provides that "Community residences, except as required by state law, will be at least 660 linear feet in any direction from the closest existing community residence as measured from the nearest property line of the proposed community residence to

16

the nearest property line of the existing community residence
along legal pedestrian rights-of-way." The distance requirement
itself does not explicitly reference housing for individuals
with disabilities. However, § 152-1 is the only provision of
Article I of Chapter 152 of the City Code, which is titled
"Housing for Persons with Disabilities," with § 152-1 titled
"Location restricted." And, perhaps most importantly, the
prefatory language for § 152-1 explicitly states that "The
location of housing for persons with disabilities shall be
regulated as follows," ensuring there is no confusion regarding
which population of people § 152-1 is intended to restrict.
This is a clear example of explicit discrimination.

Having established that § 152-1 discriminates against
individuals with disabilities on its face, the burden would then
normally shift to Defendant to provide justification for this
disparate treatment. Mt. Holly Gardens Citizens in Action, Inc.
v. Township of Mount Holly, 658 F.3d 375, 382 (3d Cir. 2011) (if
a plaintiff establishes his prima facie case, "then we look to
see whether the defendant has a legitimate, non-discriminatory
reason for its actions."). The standard in this circuit for
such justifications is, generally, that the "justification must
serve, in theory and practice, a legitimate, bona fide interest
of the [] defendant, and the defendant must show that no
alternative course of action could be adopted that would enable

17

that interest to be served with less discriminatory impact."
Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 149 (3d Cir.
1977).  As the Rizzo Court made clear, "[i]f the defendant
produces no evidence to justify the disparate treatment, a
violation is proved."  Id.

In the case at hand, the drafters of the City Code again
chose to be explicit about their purpose: § 152-1(a) explains
that housing for individuals with disabilities "shall be located
a sufficient distance from any existing community residences so
that the proposed community residence does not lessen nor
interfere with the normalization and community integration of
the residents of existing community residences or combine with
any existing community residences to contribute to the creation
or intensification of a de facto social service district."
However, Defendant has chosen not to raise any such arguments or
justifications in its brief; as previously mentioned, the only
argument raised by the City regarding § 152-1 is the mootness
argument dispensed of above.

Accordingly, even were the Court to accept the explanation
in § 152-1(a) as its own form of counterargument, Defendant has
entered no evidence into the record to support this
justification.  And even if they had, as Plaintiffs note, prior
courts in this district have previously rejected similar
justifications.  See, e.g., Arc of New Jersey, Inc. v. State of

18

<u>N.J.</u>, 950 F. Supp. 637, 645 (D.N.J. 1996); <u>Association for</u>
<u>Advancement of the Mentally Handicapped, Inc. v. City of</u>
<u>Elizabeth</u>, 876 F. Supp. 614, 623-24 (D.N.J. 1994).

The Court will therefore grant Plaintiffs' motion for
summary judgment on its disparate treatment claim, and deny
Defendant's cross-motion.  As remedy, Plaintiffs seek an order
permanently enjoining Defendant from enforcing the distance
requirement of City Code § 152-1.  Section 3613 of the FHAA
states that "if the court finds that a discriminatory housing
practice has occurred . . ., the court may . . . grant as
relief, as the court deems appropriate, any permanent or
temporary injunction."  42 U.S.C. § 3613(c)(1).  Having made
such a finding, the Court deems permanent injunctive relief
appropriate in this case, and will issue an order permanently
enjoining Defendant from enforcing the distance requirement of
City Code § 152-1.

## 2. **Plaintiffs' Disparate Impact Claims**

Plaintiffs next argue that Sections 152-1 and 163-66B of
the City Code violate the FHA, ADA, and RHA based on their
disparate impact on individuals with disabilities.  As the Court
has already granted Plaintiffs summary judgment as to their
disparate treatment claim regarding § 152-1, it need not further
address that provision.  Accordingly, the Court will turn to the
parties' arguments as to § 163-66B.

For a claim of "disparate impact under the FHAA, the
plaintiff must show that the [City's] action had a greater
adverse impact on the protected group . . . than on others."
901 Ernston Rd., LLC, 2018 WL 2176175 at *7 (quoting Lapid-
Laurel LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains,
284 F.3d 442, 466–67 (3d Cir. 2002)).  "'[N]o single test
controls in measuring disparate impact,' but the Residents must
offer proof of disproportionate impact, measured in a plausible
way."  Mt. Holly Gardens Citizens in Action, Inc., 658 F.3d at
382 (quoting Hallmark Developers, Inc. v. Fulton Cnty., 466 F.3d
1276, 1286 (11th Cir.2006)).  "Typically, 'a disparate impact is
demonstrated by statistics,' and a prima facie case may be
established where 'gross statistical disparities can be shown.'"
Id. (quoting Hazelwood Sch. Dist. v. United States, 433 U.S.
299, 307–08 (1977)).

The provision in question here, § 163-66B, provides that
"group family households may occupy dwelling units within the
City located in districts other than the R-1 and R-2 Residential
Districts."  Another provision, § 163-66(c)(1), defines a "group
family household" as "a group of four or more persons, not
constituting a family as defined in § 163-15 of this chapter,
living together in a dwelling unit as a single housekeeping
unit, under a common housekeeping management based on an
intentionally structured relationship of mutual responsibility

20

and providing an organization and stability essentially
equivalent to that found in families based on relationships of
marriage and blood."  Accordingly, Plaintiffs argue that this
restriction on group family households disparately impacts
individuals recovering from an addiction to drugs or alcohol, as
they are more likely to require a living arrangement that falls
within that definition and cannot establish one within the R-1
or R-2 zoning districts.

In support of their claim, Plaintiffs first point the Court
to statistics demonstrating that the R-1 and R-2 districts
"happen to be two of the City's most affluent neighborhoods."
(ECF No. 25-1 at 19).  Second, Plaintiffs refer the Court to the
case of Oxford House, Inc. v. Township of Cherry Hill, 799 F.
Supp. 450 (D.N.J. 1992).  There, the court held that:

> "[P]laintiffs have established a *prima facie* case of
> disparate impact by showing that the Township's
> interpretation of the definition of "family" in its zoning
> ordinance imposes more stringent requirements on groups of
> unrelated individuals wishing to live together in a rental
> property than on individuals related by blood or marriage.
> Because people who are handicapped by alcoholism or drug
> abuse are more likely to need a living arrangement such as
> the one Oxford House provides, in which groups of unrelated
> individuals reside together in residential neighborhoods
> for mutual support during the recovery process, Cherry
> Hill's application of this ordinance has a disparate impact
> on such handicapped people."

Id. at 461.

Defendant, in opposing Plaintiffs' motion for summary judgment
and in support of its own cross-motion, argues that Plaintiffs

have failed to put forth sufficient relevant evidence to demonstrate that § 163-66B has a disparate impact on individuals like those living in Serenity House.

Defendant first notes, accurately, that the only statistics cited by Plaintiffs in their moving brief's disparate impact argument relate to the relative levels of poverty in Atlantic City's different zoning districts. (See ECF No. 25-9, Pl. Ex. F; ECF No. 25-10, Pl. Ex. G) (comparing statistics on poverty rates in Atlantic City to map of zoning districts). However, Plaintiffs fail to make any direct argument as to how this demonstrates disparate impact; while the implication here appears to be that the City intended to keep facilities like Serenity House out of the wealthier districts, such an argument would go to the assessment of Defendant's justifications for any disparate impact the provision has, rather than serving as demonstration of a *prima facie* case of discrimination. Without any further evidence on this point or any direct explanation regarding how these statistics relate to the impact of the provision on individuals suffering from addiction, the Court finds that these statistics do not demonstrate a *prima facie* case of discrimination.

Nor is the Court convinced that Plaintiffs' almost complete reliance on Oxford House is justified. The central finding of that case is that "people who are handicapped by alcoholism or

22

drug abuse are more likely to need a living arrangement such as the one [Serenity] House provides" — a proposition that the court in Oxford House simply stated with no citations and no reference to any supporting evidence in the record before it. See 799 F. Supp. at 461.  Plaintiffs' moving brief simply quotes this statement for their central argument, providing no evidence to demonstrate that it is true.  However, as the Supreme Court has repeatedly made clear, "it is not enough to simply allege that there is a disparate impact ... or point to a generalized policy that leads to such an impact." Smith v. City of Jackson, 544 U.S. 228, 241 (2005).  Instead, "[a] plaintiff must show causation by statistical evidence sufficient to prove that the practice or policy resulted in discrimination. A plaintiff who 'fails to . . . produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.'" Bida v. Shuster Mgmt. LLC, No. 18-10975-KM-JBC, 2019 WL 1198960, at *4 (D.N.J. Mar. 14, 2019) (quoting Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmties. Project, Inc., 576 U.S. 519, 544 (2015)).

    In response to Defendant's argument that they had not provided any statistical evidence of disparate impact, Plaintiffs assert in their reply brief that "it is not a secret that there is an opioid epidemic within the State of New Jersey. Houses such as Serenity House are especially necessary not only

within the State of New Jersey but more specifically within
Atlantic County and Atlantic City." (ECF No. 30 at 21). They
cite to two pieces of evidence: statistics showing the number of
deaths from drug overdoses in the United States and in New
Jersey in particular, and a letter from the Atlantic County
Sheriff supporting Hansen House's work and describing
"[a]ddiction and Mental health [as] among the most significant
issues affecting every community in Atlantic County." (ECF No.
25-4, Pl. Ex A).

The Court does not see how this evidence supports the claim
that § 163-66B's restriction on group family households in the
R-1 and R-2 districts has a disparate impact on individuals
recovering from drug and alcohol addiction. Hansen House's
evidence instead seems directed at arguing that their work
helping individuals recovering from drug and alcohol addiction
is important and effective — arguments that the City does not
appear to dispute or contradict. However, this is simply not
evidence that § 163-66B has a greater impact on individuals
recovering from addiction than on other groups. Having been
provided no plausibly measured proof of disproportionate impact,
the Court finds that Plaintiffs' have failed to state a *prima
facie* case that § 163-66B is discriminatory. Accordingly,
Plaintiffs' motion for summary judgment on its disparate impact

claim regarding the provision will be denied, and Defendants'
cross-motion will be granted.

B. **Plaintiffs' As-Applied Discrimination Claims**

Beyond their facial challenges to Sections 152-1 and 163-
66B, Plaintiffs also allege a number of claims regarding
Defendant's application of the provisions to Serenity House.  As
mentioned above, Plaintiffs allege that Defendant violated the
FHA, ADA, and RHA by failing to provide them with a reasonable
accommodation.  Plaintiffs also raise reasonable accommodation
arguments under the NJLAD and NJCRA, and have alleged additional
claims under 42 U.S.C. § 1983 and the Fourteenth Amendment for
Defendant's allegedly discriminatory actions.  Defendant's
central argument as to all of these claims is that they are not
yet ripe and must be dismissed, because the City has not yet had
the opportunity to reach a final decision as to the application
of its zoning regulations to Serenity House.  The Court turns
now to the question of whether Plaintiffs' various claims are
ripe for adjudication.

1. **Plaintiffs' FHA, ADA, and RHA Reasonable Accommodation**
   **Claims**

The Court will first address Plaintiffs' claims that
Defendant violated the FHA, ADA, and RHA by failing to provide
them a reasonable accommodation.  Plaintiffs claim they sought
such an accommodation in the form of permission for "Serenity

25

House's disabled occupants—in the event Serenity House was classified as a 'group family household'—[to] reside in the City's R-2 Zone despite" § 163-66B's restriction on such housing in that zoning district.  (ECF No. 25-1 at 21).

Defendants oppose Plaintiffs' motion and move for summary judgment themselves on the basis of Plaintiffs' failure to seek a zoning variance from the City's Zoning Board of Adjustment under City regulations.  According to Defendant, this failure is fatal to Plaintiffs' claims at this stage, and therefore summary judgment must be granted on them.[1]  The Court first notes that it is uncontested that Plaintiffs did not file a formal application for a zoning variance from the Zoning Board.  (See ECF No. 26-2 at ¶ 72; ECF No. 30-3 at ¶ 72).  Plaintiffs instead argue that they "are not required to make futile gestures" such as applying for a zoning variance before filing their claims here.  (ECF No. 30 at 5).

While the Third Circuit has not directly ruled on this question, it did provide a helpful discussion of the

---

[1] The Court notes here that, although Defendants have styled their argument against these claims as an argument regarding failure to exhaust administrative remedies, the central case they cite, Lapid-Laurel LLC v. Zoning Bd. of Adjustment of Twp. of Scotch Plains, and the doctrine it outlines, is better described as dealing with the question of ripeness.  See Congregation Kollel, Inc. v. Township of Howell, N.J., 2017 WL 637689, at *11 (D.N.J. Feb. 16, 2017)(analyzing Lapid-Laurel and the impact of its discussion of a plaintiff's failure to apply for a variance on "ripeness questions in the context of FHAA").

considerations involved in Lapid–Laurel LLC v. Zoning Bd. of
Adjustment of Twp. of Scotch Plains, 284 F.3d 442 (3d Cir.
2002).  There, the Third Circuit had held that "courts reviewing
reasonable accommodations challenges to local land use decisions
brought under the FHAA should ordinarily limit their review to
the administrative record," which the Court noted "assumes that
plaintiffs who bring reasonable accommodations claims against
localities must usually first seek redress through variance
applications to the local land use authority."  Id. at 451 n.5.
In squaring this holding with prior district court cases that
had held "that in some circumstances a plaintiff need not first
apply for a variance in order to bring an FHAA reasonable
accommodations claim," the Court approvingly described the
approach of the Seventh and Eight Circuits to this question.
Id.  As Lapid-Laurel explained, the Seventh Circuit had held
that "in general a city must be afforded the opportunity to make
the requested accommodation," but the plaintiff's claim would
still be considered ripe for adjudication even if it hadn't
sought a variance "if the variance application process was
demonstrably futile."  Id. (citing United States v. Village of
Palatine, 37 F.3d 1230, 1233-34 (7th Cir. 1994) and Oxford
House-A v. City of Univ. City, 87 F.3d 1022, 1024-25 (8th Cir.
1996)).

27

This explanation fits with the one on-point case Plaintiffs have cited in their argument against administrative exhaustion or ripeness concerns, <u>Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp.</u>, 996 F. Supp. 409 (D.N.J. 1998), which the Third Circuit explicitly mentioned in its explanation.[2]  In <u>Moorestown</u>, the court found that the act of seeking a zoning variance would have been futile because "there [was] no question as to what the result of an application for a variance" would be, given that the Defendant's own witness "testified that it is 'extremely unlikely' that a variance would be granted and that he would not recommend such a variance," and apparently conceded that "such a request would be futile."  <u>Id</u>. at 426.

Plaintiffs point to no comparable evidence of futility here.  Plaintiffs' argument consists of a lengthy description of their applications and interactions with City officials during their attempt to get approval for the Serenity House.  While the Court agrees that the City officials' instructions and actions did not provide a model of clarity throughout the pre-litigation

---

[2] Although Plaintiffs have cited two other cases, besides <u>Lapel-Laurel</u> and <u>Village of Palpatine</u>, for the proposition that they need not pursue a zoning variance if it would be futile to do so, neither of those cases discuss the futility issue in question here.  <u>See</u> <u>Easter Seal Soc'y of New Jersey v. Township of N. Bergen</u>, 798 F.Supp. 228, 236 (D.N.J.1992); <u>ReMed Recovery Care Centers v. Twp. of Worcester</u>, No. CIV. A. 98-1799, 1998 WL 437272, at *6 (E.D. Pa. July 30, 1998)  Accordingly, the Court does not find these cases relevant to its analysis of Plaintiffs' reasonable accommodation claims.

time period of this dispute, it finds that Plaintiffs have
failed to demonstrate any actions or statements that would rise
to the level of showing that a zoning variance application would
be demonstrably futile.  Accordingly, the Court will deny
Plaintiffs' motion for summary judgment as to their federal
reasonable accommodation claims, and grant Defendant's cross-
motion as to those same claims.

### 2. **Plaintiffs' Remaining Claims**

As described above, Plaintiffs have also brought a series
of other claims.  While Plaintiffs do not mention their § 1983
claim in their moving brief, they do argue that (1) Defendant
violated the Due Process Clause of the Fourteenth Amendment by
denying them the ability to live in the Serenity House "[s]olely
because of . . . [their] disabled status," and (2) Defendant
violated both the NJLAD and the NJCRA by failing to grant
Plaintiffs a reasonable accommodation.  (ECF No. 25-1 at 23, 24-
26).  Defendants again argue that each of these claims must be
dismissed under the ripeness doctrine.

Unlike the Court's analysis of Plaintiffs' reasonable
accommodation claims under federal statutory law above, the fact
that Plaintiffs have not applied for a zoning variance is
immaterial here; the doctrine approvingly described by the Third
Circuit in Lapid-Laurel is limited to the context of those
claims.  Congregation Kollel, Inc., 2017 WL 637689 at *11.

Instead, Defendant argues that the remainder of Plaintiffs'
claim are not ripe because "there has not been a 'final'
determination regarding Serenity House's operation in the R-2
zone," since the City dismissed Plaintiffs' prior applications
for a CLUC and their subsequent appeal due to the incomplete
nature of their applications, and therefore has never issued a
final decision on the merits.  (ECF No. 26-1 at 36).

     As an initial matter, the Court first finds *sua sponte* that
regardless of whether Plaintiffs' NJLAD claim is ripe for
adjudication at this stage, it must be remanded to the Superior
Court for lack of jurisdiction.  Plaintiffs specifically allege
that Defendant violated N.J.S.A. § 10:5-12.5, which prohibits a
"municipality, county or other local civil or political
subdivision of the State of New Jersey, or an officer, employee,
or agent thereof to exercise the power to regulate land use or
housing in a matter that discriminates" on the basis of a
disability. However, the provision also provides that "any
person claiming to be aggrieved by an unlawful discrimination
under this section shall enforce this section by private right
of action in Superior Court."  This Court has previously
interpreted this provision to mean that New Jersey Superior
Court has exclusive jurisdiction over claims of discrimination
in land use policy by a municipality that arise under N.J.S.A. §
10:5-12.5, and therefore federal district courts lack subject

matter jurisdiction.  Mount Holly Citizens in Action, Inc. v.
Twp. of Mount Holly, No. 08-2584 (NLH), 2009 WL 3584894, at *7-8
(D.N.J. Oct. 23, 2009).  See also Al Falah Center v. Township of
Bridgewater, No. 11-2397 (MAS) (LHG), 2013 WL 12322637, at *18
(D.N.J. Sept. 30, 2013); In re Lapid Ventures, LLC, 2011 WL
2429314 at *6; Kessler Inst. for Rehab., Inc. v. Mayor & Council
of Borough of Essex Fells, 876 F. Supp. 641, 664-65 (D.N.J.
1995).  Accordingly, Plaintiffs' NJLAD claim must be remanded
for lack of subject matter jurisdiction.  See 28 U.S.C. §
1447(c) (requiring remand, not dismissal, if a court lacks
jurisdiction over a claim removed from state court).

As to Plaintiffs' remaining claims, the Third Circuit has
"consistently held that 'in § 1983 cases involving land-use
decisions, a property owner does not have a ripe claim until the
zoning authorities have had an opportunity to arrive at a final,
definitive position regarding how they will apply the
regulations at issue to the particular land in question." E & R
Enterprise LLC v. City of Rehoboth Beach, Delaware, 650 F.
App'x. 811, 813 (3d Cir. 2016) (quoting Lauderbaugh v. Hopewell
Twp., 319 F.3d 568, 574 (3d Cir. 2003)).  This rule similarly
applies to substantive due process claims.  Id. at 814.  See
also New Jersey Chinese Community Center v. Township of Warren,
712 F. App'x. 196, 199 (3d Cir. 2017) ("It is well established
that, in cases involving land-use decisions, a property owner

31

does not have a ripe, constitutional claim until the zoning
authorities have had an opportunity to arrive[] at a final,
definitive position regarding how [they] will apply the
regulations at issue to the particular land in question.")
(quoting Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d
582, 597 (3d Cir. 1998)).  Finally, the NJCRA, N.J.S.A. 10:6-1
et seq., was modeled after § 1983 and is interpreted
analogously.  See Owens v. Feigin, 947 A.2d 653 (N.J. 2008);
Norman v. Haddon Township, No. 14-cv-06034-NLH-JS, 2017 WL
2812876, at *4 (D.N.J. 2017).  Accordingly, ripeness concerns
apply to each of Plaintiff's remaining claims.

The Court finds that Defendant is correct, and the City has
not in fact issued a final, definitive decision that would
render Plaintiffs' remaining claims ripe.  The undisputed facts
in the record demonstrate that after Hansen House purchased the
Serenity House in March 2019, they were informed by the City
that they were in violation of an ordinance requiring a
certificate of occupancy prior to the establishment of a new
occupation.  Despite having received this notice two months
earlier, Hansen House proceeded to relocate residents from a
separate home to the Serenity House in late May 2019 without
having ever applied for an occupancy permit.  It was not until
almost two months after that, in July, that Hansen House first

asserted to the City their argument that they were a single family home, or first submitted an application for a CLUC.[3]

According to the City, Serenity House's CLUC application was denied based on their failure to include multiple forms of information required by § 163-211 of the City Code.  The denied application form provided by the City listed multiple procedural requirements for the CLUC form that had not been fulfilled; it also included a note referencing that Serenity House was likely in violation of § 152-1's distance requirement.  Based on this note, and the vacate order sent by Dale Finch, which also referenced the distance requirement, Plaintiffs argue that their application was denied on this ground.  The parties' briefs and statements of fact dispute at length the exact basis on which the CLUC application was denied.  As explained, Plaintiffs argue that it was denied due to § 152-1's distance requirement; Defendant argues that it was denied based only on Hansen House's failure to submit a number of documents and pieces of information required by the City Code.

---

[3] The Court notes that Plaintiffs dispute whether a CLUC is required for their certificate of occupancy.  Their argument appears to be that because Serenity House should be classified as a single family home, it does not require a CLUC before it can receive a certificate of occupancy.  The Court takes no position on this argument, besides to state that the resolution of this question again appears to be reliant on the City's determination as to what form of housing Serenity House qualifies as under the City Code.

However, the Court finds that it is immaterial to the question before it which party is correct.  The central question regarding the ripeness of Plaintiffs' claims is whether a final, definitive determination was ever made by the City.  Adopting Defendant's view, the City has in fact never issued any opinion on the merits of the CLUC application, and the only claim regarding Serenity House's potential status as a "community residence" governed by the distance requirement of § 152-1 was made by an individual who is not involved in the process of assessing CLUC applications; accordingly, no definitive decision could have been reached.  However, even viewing the facts in the light most favorable to the Plaintiffs as the party opposing summary judgment on ripeness grounds, and accepting their claim that their CLUC application was denied based on § 152-1's distance requirement, it is still clear that no final, definitive decision regarding the proper application of Atlantic City's zoning ordinances to Serenity House has ever been made.

After the CLUC application was denied, and the parties met to discuss the denial on August 16, Hansen House filed an appeal and request for interpretation with the Zoning Board on August 30, which they later supplemented with revised arguments a few days later.  However, this appeal and request for interpretation, and its arguments that Serenity House should be allowed to operate as a single family home permitted in the R-2

34

District, was never reviewed on the merits by the Zoning Board. As Defendants note, and Plaintiffs do not appear to dispute, the Zoning Board's September 24 letter informed Hansen House, according to the letter for the second time, that their appeal was procedurally deficient due to Hansen House's failure to pay the filing fee, or attach multiple documents related to the ownership of the house as required under New Jersey law and the City Code.  The letter further explicitly stated that "the City lacks sufficient information to characterize the use of the property *and takes no position on same*."  (ECF No. 1-1, Compl. Ex. N).

Based on these facts, it is clear to the Court that Atlantic City's zoning authorities have not had the "opportunity to arrive[] at a final, definitive position regarding how [they] will apply the regulations at issue to the particular land in question" necessary for Plaintiffs' claims to have become ripe. New Jersey Chinese Community Center, 712 F. App'x. at 199 (quoting Sameric, 142 F.3d at 597).  As the Third Circuit has repeatedly made clear, it is not the place of federal courts to involve themselves in local zoning issues prior to local zoning authorities having issued a final determination.

It is worth nothing that Plaintiffs do not appear to dispute the fact that the Zoning Board has never issued a final decision regarding the proper application of the City's zoning

35

regulations to the Serenity House — in their reply brief,

Plaintiffs focus their entire rebuttal on the argument that they

are not required to have waited until a final decision was

issued, as any further involvement with the City and the Zoning

Board's process would have been futile.  However, as the Court

explained above, Plaintiff has failed to provide sufficient

evidence to demonstrate that the City's proscribed process for

handling zoning disputes is so demonstrably futile as to render

their claims ripe for adjudication by this Court.[4]

Finally, the Court notes that the parties continue to

dispute, at length, exactly what position Plaintiffs took

---

[4] The Court recognizes that, as the Zoning Board noted in its
denial of Plaintiffs' appeal, the twenty-day period in which
such appeals were permitted under N.J.S.A. 40:55D-72a has long
since expired.  The parties here have not briefed or explained
what impact this may have on future CLUC applications that
Plaintiffs may submit, or what the next approved step would be
under the City Code.  Based on Defendant's repeated argument
that Plaintiffs should pursue a zoning variance, the Court
assumes that Plaintiffs continue to have available avenues for
receiving approval for Serenity House to operate in the manner
they desire.  However, even if Plaintiffs were in fact unable to
further pursue a CLUC application or further appeals, the fact
that their claims may not be "simply 'premature,' but rather
never will ripen, does not affect the disposition of this case
on the basis of the finality rule." New Jersey Chinese
Community Center, 712 F. App'x. at 199 n.5. (quoting Taylor
Inv., Ltd v. Upper Darby Twp., 983 F.2d 1285, 121287 (3d Cir.
1993)).  See also Sameric, 142 F.3d at 598 (noting that the
Third Circuit was affirming, based on the finality rule, the
grant of summary judgment on a claim alleging the City
improperly denied a demolition permit, despite plaintiff
ensuring its claim never could be ripe because it abandoned its
appeal from the initial denial of the permit after plaintiff
sold the property).

regarding Serenity House's proper classification at different
points in both the underlying dispute, and in the present
litigation.  Defendant argues that Plaintiffs' position and
claims have shifted multiple times in an attempt to gain an
advantage.  Plaintiffs argue that they have maintained
consistently that they are a single family home, have only tried
to gain approval as other forms of housing in an attempt to
reach an amicable compromise and resolution of the dispute, and
that Defendant is the party being inconsistent about the
definitions of different forms of housing under the City Code.
Given the Court's findings regarding the ripeness of many of
Plaintiffs' claims, the Court finds that this disagreement is
also immaterial to the case before it.  With no final,
definitive position having ever been taken by the City or its
Zoning Board, bodies with considerably more experience and
expertise in the application of their own zoning ordinances, the
Court will not attempt to discern exactly what form of housing
Serenity House should be considered; nor does it view the
parties' disagreement as to which positions they have taken at
different points in this dispute as relevant to its finding that
Plaintiffs' claims are not ripe.

Accordingly, Plaintiffs' motion for summary judgment as to
their § 1983, Fourteenth Amendment, and NJCRA claims will be

denied, and Defendant's cross-motion regarding those claims will be granted.

## Conclusion

For the reasons expressed above, both Plaintiffs' motion for summary judgment (ECF No. 25) and Defendant's cross-motion for summary judgment (ECF No. 26) will be granted in part and denied in part.  The Court will issue an Order enjoining Defendant from enforcing the distance requirement of § 152-1, and will remand Plaintiffs' remaining claim under the NJLAD to the New Jersey Superior Court.

An appropriate Order will be entered.


Date:  December 3, 2020            /s Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.