**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

THE HANSEN FOUNDATION, INC.
et al.,

              Plaintiffs,

    v.

CITY OF ATLANTIC CITY,

              Defendant.

No. 1:19-cv-18608 (NLH/AMD)

**OPINION**

---

**APPEARANCES**:

CHRISTOPHER S D'ESPOSITO
JESSICA R. WITMER
KEITH ALAN DAVIS
NEHMAD PERILLO DAVIS & GOLDSTEIN, P.C.
4030 OCEAN HEIGHTS AVENUE
EGG HARBOR TOWNSHIP, NJ 08234

*Attorneys for Plaintiffs.*

JOHN J. MURPHY, III
STRADLEY, RONON, STEVENS & YOUNG, LLP
LIBERTYVIEW
457 HADDONFIELD ROAD, SUITE 100
CHERRY HILL, NJ 08002-2223

MARK DAVID VILLANUEVA
ROBERT J. NORCIA
STRADLEY RONON STEVENS & YOUNG, LLP
2005 MARKET STREET
SUITE 2600
PHILADELPHIA, PA 19103

*Attorneys for Defendant.*

**HILLMAN**, **District Judge**

    This case comes before the Court on motion of Plaintiffs

seeking attorneys' fees from Defendant City of Atlantic City.

Plaintiffs had brought suit against the City alleging a series of violations under federal and state antidiscrimination laws related to two provisions of Atlantic City's City Code and the City's actions in an ongoing zoning dispute between the parties regarding the operation of a residence for women recovering from addiction.  For the reasons expressed below, Plaintiffs' motion will be granted in part and denied in part, and Defendant will be ordered to reimburse Plaintiffs in the amount of $25,646.78.

<u>**BACKGROUND**</u>

The Court outlined the relevant factual and procedural background of this case in substantial detail in an Opinion and Order issued on December 3, 2020.  (ECF No. 32 and 33).  As the Court writes primarily for the parties here and assumes their familiarity with the case, it will only restate those facts necessary for the disposition of the motion presently before the Court.

Plaintiff Hansen House, LLC ("Hansen House") is a New Jersey limited liability corporation and subsidiary of Plaintiff Hansen Foundation, Inc., a nonprofit organization whose mission is to provide affordable, long-term, safe recovery residences, access to treatment, community programs.  In March 2019, Hansen House purchased a single-family home located at 16 South Tallahassee Avenue, Atlantic City, New Jersey.  Hansen House sought to make the property, which it named "Serenity House,"

2

available to women in recovery from alcoholism and substance abuse.  Serenity House is located within Atlantic City's R-2 Zoning District.

On March 7, 2019, the City notified Hansen House that Serenity House was in violation of City Ordinance § 194-1(B) requiring a certificate of occupancy prior to the establishment of a new occupation.  Over two months later, on May 30, 2019, Hansen House moved residents of another of its residences to Serenity House, which it alleges was necessary after the residential lease at the other property lapsed.  By Hansen House's admission, it did not apply for or obtain a certificate of occupancy before its residents moved into Serenity House. (ECF No. 25-2 at ¶ 9).

In June 2019, Hansen House received a notice of a violation from the City's Department of Licensing and Inspections following an inspection of the house, because it had begun to install an H.V.A.C. system without first obtaining a construction permit as required by N.J.A.C. 5:23-2.16. Accordingly, the City's Department of Licensing & Inspections issued a "stop work order" pursuant to N.J.A.C. 5:23-2.14. Then, on July 10, counsel for Hansen House sent a letter to the City's Building and Subcode Official, Anthony Cox.  (ECF No. 1-1, Compl. Ex. F).  The letter laid out arguments similar to those Plaintiffs would later make in this lawsuit.

3

Specifically, the letter asserted that Serenity House was properly classified as a "single-family residence," argued that if it were not, a "reasonable accommodation" in the form of a waiver or modification of the City's zoning ordinances and a corresponding certificate of occupancy must be granted, and stated that if the City did not permit Serenity House to operate as planned, the City faced liability from suit under federal anti-discrimination law.

On July 15, 2019, almost two months after Hansen House moved residents into Serenity House without obtaining a certificate of occupancy and a few days after Plaintiffs sent the letter described above, the City filed a municipal complaint against Serenity House for "Failure to Obtain an 'Occupancy Permit' Before New Occupancy Occurred" in violation of City Code § 194-1B.  (ECF No. 1-1, Complaint Ex. G).  Plaintiffs responded to this complaint by submitting an application for a Certificate of Land Use Compliance ("CLUC") on July 18, which sought to register the house as a single-family home.  Under the City Code, a CLUC is a prerequisite for certain forms of housing to receive a certificate of occupancy.

That same day, Plaintiffs received an order to vacate Serenity House.  The order was sent by Dale Finch, Director of the City's Department of Licensing and Inspections, and stated that it was based on both "a pattern of disregard for code

4

requirements," and the "absolute prohibition against a community
residence at this specific location" under City Code § 152-1.
(ECF No. 1-1, Compl. Ex. J).  Section 152-1 governs "(family)
community residence[s]," which the provision makes clear is the
City Code's term for "housing for persons with disabilities,"
and mandates that "[c]ommunity residences, except as required by
state law, . . . be at least 660 linear feet in any direction
from the closest existing community residence."  Plaintiffs have
not been forced to actually vacate the residence.

The next day, July 19, 2019, Serenity House's CLUC
application was denied by City Zoning Officer Barbara Woolley-
Dixon.  The parties met to discuss the situation on August 16,
at which meeting representatives for Hansen House were provided
with the denied CLUC application.  (ECF No. 1-1, Compl. Ex. I).
The application listed multiple procedural requirements for the
CLUC form that had not been fulfilled, and also included a note
stating that Serenity House was in violation of § 152-1's
distance requirement.  The parties dispute whether the
procedural violations, or § 152-1, were the actual reason for
the denial.

Two weeks later, on July 30, Hansen House filed an appeal
and a request for an interpretation of the City's zoning
provisions with the City's Zoning Board of Adjustment.  The
filing appealed what they characterized as the City's denial of

5

their CLUC because of a determination that Serenity House was a community residence governed by the distance requirement of § 152-1, argued that Serenity House was in fact a group family household under § 163-66, and alternatively requested an interpretation by the Zoning Board as to exactly what form of housing Serenity House constituted.  (ECF No. 1-1, Compl. Ex. L).

At some point after submitting their appeal and request for an interpretation, Plaintiffs apparently realized that pursuant to § 163-66B, group family households are barred from the R-2 district that Serenity House is located in, and filed a supplement to their appeal on September 5.  (ECF No. 1-1. Compl. Ex. M).  That supplement again requested that the CLUC denial be overturned, arguing that the denial had occurred because of the City's determination that Serenity House was a community residence governed by § 152-1, and again argued that Serenity House was and should be characterized as a single-family home permitted in the R-2 district.

A few weeks later, on September 24, the Zoning Board sent Plaintiffs a letter regarding the deficiencies in their appeal and request for an interpretation.  (ECF No 1-1, Compl. Ex. N). The letter made clear that the Zoning Board was unable to review their application based purely on procedural grounds: Plaintiffs had failed to pay the filing fee and attach multiple documents

providing information related to the ownership of the house as required under New Jersey law and the City Code.  It further explicitly stated that "the City lacks sufficient information to characterize the use of the property and takes no position on same."

Only two days later, on September 26, Plaintiffs filed their complaint in this action in New Jersey Superior Court. (ECF No. 1-1), which was eventually removed by the City to this Court.  The Complaint asserted both facial challenges to §§ 152-1 and 163-66B and multiple as-applied challenges and claims based on Defendant's actions throughout this process, under The Fair Housing Act ("FHA"), 42 U.S.C. § 3602 et. seq. (Counts I-III); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et. seq. (Count IV); the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 791 et. seq. (Count V); 42 U.S.C. § 1983 (Count VI); the Fourteenth Amendment of the United States Constitution (Count VII); the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et. seq. (Count VIII); and the New Jersey Civil Right Act ("NJCRA"), N.J.S.A. 10:6-1 et. seq. (Count IX).

Both parties ultimately filed cross motions for summary judgment.  The Court issued an Opinion and Order granting in part and denying in part both motions on December 3, 2020.  (ECF No. 32 and 33).  The Court specifically granted Plaintiffs

summary judgment on their disparate treatment claim attacking
City Code § 152-1 under the FHA, ADA, and RHA.  The Court
"easily [found] that § 152-1 is explicitly discriminatory,"
noting that the provision's language made clear it governed only
the location of housing for persons with disabilities and
therefore "ensur[ed] there is no confusion regarding which
population of people § 152-1 is intended to restrict."  (ECF No.
32 at 16-17).  The Court found that this was therefore a "clear
example of explicit discrimination," and that the City had
entirely failed to put forward any justification for this
disparate treatment.  Id. at 17-19.

    It also rejected the City's main argument for dismissal of
this claim: the Court held that, although the City had promised
during the course of this litigation that it would not again
enforce § 152-1's distance requirement against Hansen House or
any other party, the claim was not moot because "'[t]he timing
of Defendant['s]' promise not to enforce § 152-1, after
litigation had already begun, 'as well as the ease by which
Defendant[] could conceivably re-institute the ban, convince the
Court that the alleged injury could reasonably recur absent the
requested relief.'"  Id. at 15-16 (quoting Cottrell v. Good
Wheels, No. 08-1738 (RBK/KMW), 2009 WL 3208299, at *5 (D.N.J.
Sept. 28, 2009)).  Therefore, the Court entered summary judgment
for Plaintiffs on their claims targeting § 152-1 under the FHA,

RHA, and ADA.[1]  Since section 3613 of the FHAA provided explicit authority to enter permanent injunctive relief for a violation of that statute, the Court therefore permanently enjoined Atlantic City "from enforcing the distance requirement of City Code § 152-1."  Id. at 19.

However, that was the only relief this Court granted to Plaintiffs.  The Court proceeded from there to grant Defendant's cross-motion for summary judgment as to every other claim besides Plaintiffs' NJLAD claim, which it remanded back to state court for lack of subject matter jurisdiction.  First, the Court found that Plaintiffs had failed to put forward sufficient measured proof to state a *prima facie* case that City Code § 163-66B is discriminatory.  Id. at 24.  Second, it found that Plaintiffs' reasonable accommodation claims under the FHA, RHA, and ADA were not yet ripe, because Plaintiffs had failed to seek a zoning variance through the City's process for seeking

---

[1] In its opposition brief, Defendant appears to assert that the Court only granted summary judgment on Plaintiffs' FHA or RHA claims here, stating that "[n]o finding was made relative to the ADA."  But the Court made clear in its analysis of Plaintiffs' disparate treatment claim regarding § 152-1 that it was conducting a joint analysis under all three statutes, "[s]ince the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, [and] courts have concluded that the FHA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes."  Id. at 11 (quoting Yates Real Estate, Inc. v. Plainfield Zoning Board of Adjustment, 404 F. Supp. 3d 889, 914 (D.N.J. 2019)).

variances prior to filing this lawsuit.  Id. at 28-29.

The Court next held that Plaintiffs' substantive due
process claims and claims under § 1983 and the NJCRA were
similarly not properly before this Court at that time, because
under both parties' theories of the facts of the case it was
"clear to the Court that Atlantic City's zoning authorities have
not had the 'opportunity to arrive[] at a final, definitive
position regarding how [they] will apply the regulations at
issue to the particular land in question' necessary for
Plaintiffs' claims to have become ripe."  Id. at 35 (quoting New
Jersey Chinese Community Center v. Township of Warren, 712 F.
App'x. 196, 199 (3d Cir. 2017)).  Finally, the Court found that
it did not have subject matter jurisdiction over Plaintiffs'
claim for violation of N.J.S.A. § 10:5–12.5 and remanded that
claim back to state court.  Id. at 31.

A few weeks after the Court issued its Opinion and Order,
Plaintiffs filed the present motion for attorneys' fees, seeking
reimbursement for the fees and costs they incurred litigating
this action.  (ECF No. 37).  Defendant, unsurprisingly, has
opposed the motion.  (ECF No. 42).  Plaintiff has not filed any
reply brief in further support of their motion, and the time for
filing such briefs has since passed.  Plaintiffs' motion is
therefore ripe for adjudication.

**DISCUSSION**

**I.    Subject Matter Jurisdiction**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**II. Analysis**

Plaintiffs here are seeking to recover $105,159 in attorneys' fees and $424.28 in related costs that they claim they are entitled to under both the FHA and the ADA.  Plaintiffs are correct that the Court has the discretion to award attorneys' fees and costs to the "prevailing party" under both the FHAA, 42 U.S.C. § 3613(c)(2) ("[T]he court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee and costs"), and the ADA, 42 U.S.C. § 12205 ("[T]he court ..., in its discretion, may allow the prevailing party ... a reasonable attorney's fee, including litigation expenses, and costs").  Defendant's opposition brief argues both that Plaintiffs are not entitled to any fees or costs, and that to the extent they are, the amount of fees awarded should be dramatically reduced from the amount requested.

**A. Plaintiffs Are Prevailing Parties**

As the FHA and ADA provisions cited above make clear, to obtain an award of attorneys' fees and costs under either statute, Plaintiffs must first demonstrate that they were prevailing parties in this action.  "The Supreme Court has given

11

a 'generous formulation' to the term 'prevailing party,' stating that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" Truesdell v. Philadelphia Housing Authority, 290 F.3d 159, 163 (3d Cir. 2002) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)).

However, "to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant . . . The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." Texas State Teachers Association v. Garland Independent School District, 489 U.S. 782, 792–93, 109 S. Ct. 1486, 103 L.Ed.2d 866 (1989). And the Supreme Court has further clarified that a plaintiff "must obtain [either] an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement, ... [and] [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement." Farrar v. Hobby, 506 U.S. 103, 111, 113 S. Ct. 566, 121 L.Ed.2d 494 (1992) (internal citations omitted).

Plaintiffs' argument for why they qualify as prevailing

12

parties is straightforward: they brought suit claiming that the distance requirement of City Code § 152-1 violated the FHA, RHA, and ADA and seeking an injunction blocking the City from enforcing that requirement, and the Court granted them summary judgment on their claims and entered an Order permanently enjoining the City from enforcing that requirement.  Defendant's counterargument is only marginally more complicated, as it contends that "[t]here has been no direct benefit to Hansen House from this Court's decision" because Plaintiffs are no closer to being in compliance with the City's zoning laws than they were before instituting this action.

While Defendant's argument is not without some persuasive value, the Court ultimately finds that Plaintiffs achieved sufficient success in this action to qualify as prevailing parties.  In arguing that there has been no "material alteration" to the legal relationship between the parties, Defendant is essentially taking the 10,000-foot view of the case, viewing its purpose and goals in the most general, over-arching manner.  From Defendant's perspective, the singular focus of this action for Plaintiffs was to ensure their compliance with the City's zoning laws and therefore be able to operate Serenity House at the 16 South Tallahassee Avenue location in the manner they intended.  And, as a general rule, that is clearly the case here — the ultimate end goal of

Plaintiffs in filing this lawsuit was unquestionably to achieve
that specific outcome, as Plaintiffs' own prayer for relief
makes clear.  (See ECF No. 1-1 at 19-20) (requesting that the
Court "Enter a temporary restraining order and/or preliminary
and permanent injunctions enjoining the Defendant, the City of
Atlantic City, its officers, employees, agents, attorneys and
successors, and all persons in active concert or participating
with any of them, from interfering with the operation of
Serenity House as a home for recovering alcoholics and substance
abusers, and/or from interfering in any way with the rights of
the Plaintiffs to reside in those premises").

     However, when viewed more discretely, Plaintiffs individual
claims had their own discrete goals which Plaintiffs undoubtedly
hoped would also result in obtaining their larger desired
result.  Plaintiffs therefore brought claims under three
separate federal anti-discrimination statutes for the direct
purpose of having the distance requirement of § 152-1 declared
illegal and ensuring the City could never again attempt to
enforce it against either Hansen House or any other party.
Defendant, for its part, jumps over this individual goal and
looks only to the desired result of the litigation writ large.
It argues that because the Court did not strike down the other
zoning provisions attacked by Plaintiffs due to Hansen House's
failure to first pursue a zoning variance through the City's

14

prescribed procedures, and the continuing validity and
enforceability of those other provisions presumably means that
Plaintiffs' operation of Serenity House is not in compliance
with the City Code, that Plaintiffs achieved no material
alteration to the parties' legal relationship.

To the contrary, the Court finds that Plaintiffs certainly
"succeed[ed] on [a] significant issue in [this] litigation which
achieve[d] some of the benefit the parties sought in bringing
suit.'" Truesdell, 290 F.3d at 163 (quoting Hensley, 461 U.S.
at 433). Plaintiffs' Complaint here had multiple discrete
targets. They sought injunctions against the enforcement of two
specific City Code provisions, §§ 152-1 and 163-66B, and
additional orders from this Court essentially directing the City
to grant Serenity House a reasonable accommodation and enjoining
the City from interfering with Plaintiffs' operation of Serenity
House moving forward.

Although Plaintiffs unquestionably hoped that achieving the
first goal, an injunction against the enforcement of the
distance requirement of § 152-1, would help aid them in their
pursuit of their other goals, that does not mean that the
legality and enforceability of that provision was not still a
significant issue in this litigation. While the City argues
that the Court's permanent injunction merely ensures the City is
"not enforcing an ordinance section that it already refrained

15

from enforcing as to Hansen House (or which may not have applied
to Serenity House)," (ECF No. 47 at 10-11), the factual record
here makes clear that the City actively cited this provision as
potentially blocking Plaintiffs' ability to operate Serenity
House at multiple points prior to the filing of the Complaint.
It is undisputed that the initial order to vacate Serenity House
issued by Dale Finch, Director of the City's Department of
Licensing and Inspections, explicitly pointed to the "absolute
prohibition against a community residence at this specific
location" under City Code § 152-1 as one of its bases.  (ECF No.
1-1, Compl. Ex. J).  And while the parties disagree on the
ultimate basis for the City's subsequent denial of their CLUC
application, there is no dispute that the copy of the
application on which City representatives listed the issues with
the operation of Serenity House and the CLUC application also
included a note stating that Serenity House was in violation of
§ 152-1's distance requirement.  (ECF No. 1-1, Compl. Ex. I).

Defendant's argument that Plaintiffs achieved no true
success here because they were not going to enforce the distance
requirement anyway is simply a retread of the exact mootness
argument this Court rejected in its previous Opinion.  It is
true that, in cases where a defendant has truly mooted certain
issues through its voluntary actions and therefore avoided an
enforceable judgment on the merits being entered against it, the

16

plaintiffs would not be considered a prevailing party entitled to a fee award.  See Singer Management Consultants, Inc. v. Milgram, 650 F.3d 223, 231 (3d Cir. 2011) (holding that the plaintiff was not a prevailing party because the defendant's voluntary actions had mooted certain issues and no judgement was issued on the merits).  But the Supreme Court has been clear that "[i]f a case is not found to be moot, and the plaintiff later procures an enforceable judgment, the court may of course award attorney's fees."  Buckhannon Bd. and Care Home, Inc., 532 U.S. 598 at 609.

The December 3, 2020 Opinion in this case was clear: the City's voluntary actions did not moot Plaintiffs' claims related to § 152-1, the Court reached a decision on the merits on the provision's legality, and the Court's accompanying Order and permanent injunction was an enforceable judgment against Defendant.  The City here actively cited § 152-1's distance requirement in issuing a vacate order to Serenity House on that basis, later cited it again in a denial of their CLUC application, and now wishes to avoid the consequences of their actions simply because they later made an entirely non-binding "promise" not to enforce it again later.  Short of a Court Order legally prohibiting them from doing so, there is simply no basis by which Plaintiffs could have been confident that the City would not again raise that exact restriction if they attempted

17

to move forward with the City's prescribed processes for ensuring their operation of Serenity House was in compliance with the City Code.

Plaintiffs, by filing this action, have obtained an enforceable order which permanently ensures that the clearly discriminatory restrictions of § 152-1 will not be enforced against them or any other parties in the future.  The Court fully understands that other provisions of the City Code may still keep Plaintiffs from obtaining the full results they sought in filing this lawsuit — and, as will be discussed below, Plaintiffs' failure to obtain their other desired goals should, and will, play a role in the Court's assessment of the amount of fees and costs they will be awarded here.  But the Court finds that Plaintiffs were, on this one significant issue, prevailing parties in this action.

But before beginning its assessment of what amount of fees and costs Plaintiffs should recover here, the Court must first address Defendant's second, related argument: that "special circumstances" in this action warrant a finding that, even though Plaintiffs qualify as prevailing parties, they should nonetheless receive no fees or costs.  The "special circumstances" exception to the general rule that prevailing parties should recover attorneys' fees "is an extremely narrow one applied only in unusual circumstances and then only upon a

18

strong showing by the party asserting it." <u>Arc of N.J., Inc. v.</u>
<u>Twp. of Voorhees</u>, 986 F. Supp. 261, 267 (D.N.J. 1997) (citing
<u>Ashley v. Atlantic Richfield Co.</u>, 794 F.2d 128, 131, 134 n.9 (3d
Cir. 1986)).  The Third Circuit has noted that "a finding of
such special circumstances is very rare, and the Supreme Court
has offered little guidance as to what situations qualify"
beyond indicating that the special circumstances exception
applies when "it is clear that the reasonable fee is no fee at
all." <u>Ward v. Philadelphia Parking Authority</u>, 634 F. App'x.
901, 906 (3d Cir. 2015) (citing <u>Farrar</u>, 506 U.S. at 118).

    Defendant argues that this is such a case.  But Defendant
has failed to point the Court to any similar cases in which a
court has declined to award attorneys' fees to a prevailing
party, and has further failed to demonstrate why this case
presents such special and unusual circumstances as to justify a
full withholding of any recovery.  Defendant's arguments
regarding the extent to which Plaintiffs' own actions led to the
dismissal of many of their claims and their apparent ongoing
inability to bring Serenity House into compliance with the
City's zoning laws are valid.  But the Court views them as more
relevant to its analysis of how far Plaintiffs' award of costs
and fees should be reduced — and whether Plaintiffs should
recover any of the fees they sustained in litigating the claims
that were dismissed, or recover only for the fees they sustained

in litigating the legality of § 152-1's distance requirement —
not as a sufficiently special circumstance warranting the
withholding of any award at all.  Defendant may believe
Plaintiffs have "unclean hands" here, but the Court has now
found twice that Plaintiffs achieved success on a significant
issue in this action, and notes here that their lawsuit helped
achieve a genuine social good via the invalidation of a nakedly
discriminatory zoning restriction that the City declined to even
offer a non-discriminatory justification for.  The Court will
therefore move forward with assessing what amount Plaintiffs
will be awarded.

###### B. **Plaintiffs Will Be Awarded Reduced Fees and Costs**

The Court, having found that Plaintiffs are a prevailing
party, turns next to the question of exactly what amount of the
fees and costs they seek in their motion must be reimbursed by
Defendant.  Plaintiffs here are seeking to recover $105,159 in
attorneys' fees and $424.28 in related costs.  While the Court
will grant Plaintiffs a fee award here, it will grant Plaintiffs
an award that is dramatically reduced from the full amount their
motion seeks.

When calculating an attorney's fee award under the ADA and
similar statutes, the "lodestar" method provides the starting
point for determining reasonable attorney's fees.  Lanni v. New
Jersey, 259 F.3d 146, 149 (3d Cir. 2001).  See also McKenna v.

City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) ("The
starting point for determining the amount of a reasonable fee is
the lodestar approach.") (quoting Hensley v. Eckerhart, 461 U.S.
424, 433 (1983)).  Under the lodestar approach, "court[s]
determine[] an attorney's lodestar award by multiplying the
number of hours he or she reasonably worked on a client's case
by a reasonable hourly billing rate for such services given the
geographical area, the nature of the services provided, and the
experience of the lawyer."  S.S. Body Armor I., Inc. v. Carter
Ledyard & Milburn LLP, 927 F.3d 763, 773 (3d Cir. 2019) (quoting
Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir.
2000)).

     A district court may discount any hours that it deems
unreasonable, including those considered to be "excessive,
redundant, or otherwise unnecessary."  See Hensley, 461 U.S. at
433.  Although the Court has substantial discretion to determine
what constitutes a reasonable rate and reasonable hours, once
the lodestar is determined, it represents the presumptive
reasonable fee.  Lanni, 259 F.3d at 149.  "The prevailing party
bears the burden of establishing by way of satisfactory
evidence, in addition to [the] attorney's own affidavits ...
that the requested hourly rates meet this standard."  School
District of Philadelphia v. Kirsch, 722 F. App'x. 215, 229 (3d
Cir. 2018) (quoting Maldonado v. Houstoun, 256 F.3d 181, 184 (3d

Cir. 2001)).

"[O]nce the fee petitioner 'submit[s] evidence supporting
the hours worked and rates claimed,' the party opposing the fee
application has the burden to challenge the reasonableness of
the requested fee." J.L. v. Harrison Township Bd. of Educ., No.
14-2666 (RMB/JS), 2017 WL 1954535, at *2 (D.N.J. May 11, 2017)
(quoting McKenna, 582 F.3d at 459).  If sufficiently specific
objections to the requested fees are raised, "a district court
'has a great deal of discretion to adjust the fee award in light
of those objections.'" Id. (quoting Taylor v. USF-Red Star
Exp., Inc., 212 F. App'x. 101, 111 (3d Cir. 2006)).

       1. Reasonableness of counsels' hourly rates

To calculate Plaintiffs' lodestar, the Court must first
assess the hourly rates claimed for Plaintiffs' counsel.
Plaintiffs have put forth the following hourly rates used in
their lodestar calculations: $410 per hour for Keith A. Davis, a
partner, $300 per hour for Jessica R. Witmer, Michael J. Lario,
Jr., and Chris D'Esposito, all associates, $325 for a Matt
Sykes, a fourth associate, and $400 for Steve Polin.  In support
of these rates, they point the Court to rates published by
Community Legal Services, which demonstrate that these rates are
either average or below average for attorneys with the numbers
of years of experience they each have.

Defendant here does not challenge Plaintiffs' requested

hourly rates, and "[t]he fee schedule established by Community Legal Services, Inc. ("CLS") 'has been approvingly cited by the Third Circuit as being well developed and has been found ... to be a fair reflection of the prevailing market rates.'" Maldonado v. Houstoun, 256 F.3d 181, 187 (3d Cir. 2001) (quoting Rainey v. Philadelphia Housing Auth., 832 F. Supp. 127, 129 (E.D. Pa. 1993)).  See also Rhodes v. Marix Servicing, LLC, No. CV121636MASDEA, 2020 WL 5760455, at *5 (D.N.J. Sept. 28, 2020) (approving hourly rates based on CLS fee schedule).  The Court, therefore, is satisfied that Plaintiffs' hourly rates are reasonable here.

        2. Reasonableness of hours billed

    "After a court ascertains a reasonable hourly rate, it must then determine whether the hours that the attorney expended are reasonable."  Machado v. Law Offices of Jeffrey H. Ward, No. 14-7401, 2017 WL 2838458, at *2 (D.N.J. June 30, 2017) (citing Hensley, 461 U.S. at 433–34).  The Court must "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'"  Maldonado, 256 F.3d at 184.  The Court will exclude any hours that "were not reasonably expended" from the fee calculation.  Hensley, 461 U.S. at 434 (citation omitted). "Hours are not reasonably expended if they are excessive,

redundant, or otherwise unnecessary." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  To determine whether the hours expended in this matter are reasonable, "it *is* necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request." Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001) (emphasis in original).

"The party seeking attorney[s'] fees has the burden to prove that its request for attorney[s'] fees is reasonable." Rode, 892 F.3d at 1183.  "When the fee petitioner has produced satisfactory evidence for a fee award, the burden shifts to 'the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended.'" Rhodes, 2020 WL 5760455, at *3 (quoting Apple Corps. Ltd. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 485 (D.N.J. 1998)).  "If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the [C]ourt has wide discretion to adjust the attorneys' fee ...." Apple Corps. Ltd., 25 F. Supp. at 480 (citation omitted); see also Hensley, 461 U.S. at 433 (noting that determining reasonableness of fees is within the trial court's discretion).

In cases such as this, the Court "has wide discretion to adjust the attorneys' fee for a variety of reasons such as inadequate documentation of hours spent, reasonableness of hours

24

expended or duplication of efforts." Apple Corps. Ltd., 25 F. Supp. 2d at 485 (citing Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983)).  "The Court, however, must be prompted by the opposing party to review specific charges and cannot make any adjustments *sua sponte*." Machado, 2017 WL 2838458, at *2 (citing Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005)).  "The lodestar calculation is presumed reasonable, but the '[C]ourt can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained.'" Id. (quoting Washington v. Phila. Cty. Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996)).

As mentioned above, Plaintiffs here are seeking attorneys' fees in the amount of $105,159 for 324.6 hours billed by six different attorneys, as well as $424.28 in related costs. Defendants, for their part, have raised numerous arguments for why different aspects of Plaintiffs' fee requests are deficient or inappropriate here and should be denied.

The Court has therefore engaged in a searching and detailed review of the billing records submitted by Plaintiffs.  It notes up front that, as Defendant has pointed out, Plaintiffs' billing records are far from a model of clarity; they not only include substantial numbers of time entries with vague work descriptions, but are also not in chronological order and appear to involve multiple different internal file numbers and matter

25

names, all of which complicate this Court's attempt to perform the line-by-line review of the records required of it.  Nor does Plaintiffs' moving brief do much to assist the Court with its efforts.  Despite having submitted 81 pages of billing records and seeking an award of over $100,000 in attorneys' fees, Plaintiffs' have put forward only a brief, conclusory three-page argument for why the Court should find their claimed hours were reasonably expended, and has not filed a reply brief responding to Defendant's specific objections.

On the other side, Defendant has put forward several pinpointed, detailed attacks on the specific time entries they think should be disregarded, and has helpfully provided the Court with a number of exhibits breaking those entries down into separate charts for easier review.  For the sake of efficiency and clarity, the Court will largely cite to Defendant's summary exhibits here in discussing individual billing entries, particularly those that will be excluded.  However, the Court has directly reviewed Plaintiffs' own submission in great detail, and for each example where the Court cites to Defendant's exhibit, the Court has cross-checked Defendant's representations regarding those entries with the relevant time entries in the billing records submitted by Plaintiffs at ECF No. 37-2, and ensured their accuracy.  The Court now turns to its calculation of the number of hours reasonably expended on

this litigation, and to the specific attacks raised by
Defendant.

### a. Work performed prior to this litigation

First, Defendant challenges over $6,000 in fees that were
billed for work done prior to the filing of this lawsuit,
arguing that Plaintiffs are not entitled to an award of those
fees.  Defendant's central argument is that "the discretionary
work performed by Hansen House's counsel prior to drafting the
Complaint was not 'both useful and of a type ordinarily
necessary' to the advancement of the litigation."

In making this argument, Defendant largely relies upon Webb
v. Board of Ed. of Dyer Cty., 471 U.S. 234 (1985), in which the
Supreme Court addressed a parties' pursuit of attorneys' fees
pursuant to 42 U.S.C. § 1988 for work done prior to the
initiation of the lawsuit and in a prior, but related,
administrative proceeding.  Defendant cites Webb for the
proposition that a plaintiff is only entitled to an award of
such fees if the pre-litigation work is shown to have been "both
useful and of a type ordinarily necessary to advance the civil
rights litigation to the stage it reached before settlement."
(ECF No. 42 at 20) (quoting Webb, 471 U.S. at 243).  But while
the quoted language is an accurate description of how courts
analyze requests for fees for pre-litigation administrative
proceedings and related litigation actions, the Webb Court

27

further made clear that attorneys' fees should be awarded for work done "on the litigation" and "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.' Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case." Webb, 471 U.S. at 243.  See, e.g., Jimenez v. Best Behavioral Healthcare, Inc., No. 18-1003, 2019 WL 6528766, at *6 (E.D. Pa. Dec. 3, 2019) (awarding fees in FLSA case for pre-litigation work described as "initial research, investigation, and client-interview work performed prior to the filing of the complaint").

The question before the Court then is whether the work conducted by Plaintiffs' counsel prior to the filing of their Complaint on September 26, 2019, falls into this category. Defendant, as it has for each of its objections, has submitted a chart listing the specific time entries from before September 26, 2019, that it believes should be excluded from Plaintiffs' award.  While Defendant believes that none of the work performed prior to September 26 meets the standard for reimbursement, the Court finds that several of Plaintiffs' time entries are sufficient on their face to be included in their award of fees and costs.  Specifically, the Court finds that counsels' time entries, listed below, which (1) describe work performed on the July 9, 2019 letter to Anthony Cox of the Building Department,

28

which outlined the requirements of the ADA and FHA, provided
relevant case law, and discussed potential violations of those
statutes by the City (ECF No. 1-1, Ex. F); and (2) describe
research on legal topics that were directly addressed and
analyzed on the parties cross-motions for summary judgment, are
sufficiently "associated with the development of the theory of
the case" and involved work that was sufficiently useful for
Plaintiffs' eventual lawsuit so as to warrant an award of fees:

| Date | Description | Time Spent | Hourly Rate | Fee Sought |
|------|-------------|------------|-------------|------------|
| 7/9/2019 | Prepare correspondence to Anthony Cox-Bldg. Dept. | 1.5 | $410 | $615 |
| 7/31/2019 | Miscellaneous activity research re: time limit to challenge ordinance | 1 | $300 | $300 |
| 7/31/2019 | Miscellaneous activity analysis to KAD re: time limit to challenge ordinance & exceptions | 1 | $300 | $300 |
| 8/8/2019 | Analyze & research re: ripeness of claim against distance limitation in Atlantic City | 1.2 | $300 | $360 |
| 8/9/2019 | Review Easter Seals of NJ v. Twp. of N. Bergen re: exhaustion of remedies | 0.5 | $300 | $150 |

Plaintiffs also seek fees for the time their counsel spent preparing for and attending the August 16, 2019, meeting with the City's representatives regarding the denial of their CLUC application, and for preparing their eventual appeal of that denial.  But while Plaintiffs devote nearly a fully page of their moving brief to arguing that Defendant's actions regarding that meeting and the eventual denial are the only reason a lawsuit was needed, they have failed to put forward any basis for the Court to find that time spent by their counsel on those activities was sufficiently related to their eventual lawsuit as to justify an entitlement to an award of fees here.

The Court does acknowledge that, as it outlined in its prior Opinion, Plaintiffs were required here to pursue their claims through the administrative process until the City issued a final decision prior to instituting this action.  Under normal circumstances, this would almost certainly entitle a party to fees for the work their counsel did on preparing documents to appeal an initial denial of an application, as Plaintiffs' counsel did here.  But as the Court made clear in its December 3, 2020 Opinion, Plaintiffs' appeal was denied by the City due to several separate procedural deficiencies, including a failure to even pay the required filing fee; while Plaintiffs' brief supporting their fee requests characterizes this denial as

30

having been made on "tenuous grounds," (ECF No. 37-1 at 15), the Court noted in its prior Opinion that "Plaintiffs do not appear to dispute [that] the Zoning Board's September 24 letter informed Hansen House, according to the letter for the second time, that their appeal was procedurally deficient due to Hansen House's failure to pay the filing fee, or attach multiple documents related to the ownership of the house as required under New Jersey law and the City Code." (ECF No. 32 at 35).

Instead, Plaintiffs argued in their motion for summary judgment that further pursuing their appeal or pursuing a zoning variance under the City's policies for variances would have been futile. The Court entirely rejected that argument, holding that Plaintiffs had entirely "failed to provide sufficient evidence to demonstrate that the City's proscribed process for handling zoning disputes is so demonstrably futile as to render their claims ripe for adjudication by this Court." Id. at 36. Plaintiffs themselves short-changed the administrative process here by initiating this action without exhausting the City's processes or receiving a final decision on their compliance with the City's zoning regulations, and had the majority of their claims dismissed because they chose to do so. The Court will not reward them for those actions by granting them an award of fees for insufficient and incomplete actions taken in a doomed administrative appeal prior to the date this lawsuit was filed.

The Court will further deduct the amounts requested for the remainder of the time entries listed in Defendant's Exhibit 1 for work done prior to September 26, 2019.  As stated above, it is Plaintiffs' burden at this stage to demonstrate their entitlement to an award of fees and costs.  But numerous of Plaintiffs' pre-September 26th time entries make it entirely impossible for the Court to assess whether the time billed could be considered sufficiently spent "on the litigation" or whether it was unrelated and must be excluded.  This includes entries with such vague descriptions as "Prepare correspondence to client Dave Goddard (Tallahassee)," numerous descriptions essentially identical to "Prepare correspondence to Cathy Ward," "Telephone call to opposing counsel Anthony Swan (ofc)," "Telephone call to client Goddard/Lentz re: Tallahassee Ave.," and more.  (ECF No.  at 42-1, Ex. 1 at 2-3).  With Plaintiffs having failed to provide further context on these entries in either the billing records themselves or their briefing on this present motion, the Court simply cannot assess what this time was spent on and therefore will exclude these hours and the amounts requested for this work from Plaintiffs' award.  As explained above, the Court finds that the 5.2 hours listed above was time billed on research and drafting that ultimately benefited Plaintiffs' pursuit of their claims, and will not exclude those hours or deduct the $1,725 of corresponding fees.

Defendant challenged 16.9 hours spent on pre-litigation work, totaling $6,016 fees.  The Court finds that the remaining 11.7 hours were not reasonably expended on this litigation, and the Court will exclude those hours challenged by Defendant from its calculation of Plaintiffs' lodestar, totaling $4,291 in deductions.

b. <u>Work performed on municipal court matters</u>

Plaintiffs' billing records make clear that they similarly seek reimbursement for fees incurred in litigating the separate municipal court matter initiated by the City against Hansen House in July 2019.  Their argument for why an award of these fees is appropriate is only one sentence and directly follows their argument outlined above for why they should receive fees for work performed prior to this litigation: they simply assert that "[i]n a similar vein, Plaintiffs should be awarded all fees incurred by having to defend in municipal court the violations." (ECF No. 37-1 at 15).

The Third Circuit, in <u>Gulf Stream III Assoc., Inc., v. Gulfstream Aerospace Corp.</u>, 995 F.2d 414 (3d Cir. 1993), explained that plaintiffs may be entitled to an award of attorneys' fees incurred in separate, but related litigation under certain specific circumstances: "if the plaintiff can prove that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized

in the instant litigation, [and] that the time spent on the
other litigation was 'inextricably linked' to the issues raised
in the present litigation, ..., then the district court may
include those fees and expenses in its fee award."  Id. at 420
(quoting Keenan v. City of Philadelphia, 983 F.2d 459, 474 (3d
Cir. 1992)).  But once again, "[t]he burden is upon the
prevailing party to establish that the services for which it
seeks fees actually advanced the civil rights litigation."
Clark v. Bd. of Educ. of Twp. of Neptune, 907 F. Supp. 826, 830
(D.N.J. 1995).

Plaintiffs here have made no attempt to do meet this
burden.  As mentioned above, their argument for why they should
be awarded fees associated with the separate municipal court
matter simply refers the Court to their previous argument
regarding pre-litigation work.  But the only argument they put
forward there was that they attempted to resolve this issue
prior to the filing of any actions and it was Defendant's fault
that either litigation was necessary.

The Court first notes that the record in this case shows
clearly that the City's municipal court filing was solely
focused on the fact that Plaintiffs had moved individuals into
Serenity House and began operations there without having first
applied for or obtained a certificate of occupancy.  (ECF No. 1-
1, Ex. G and H) (municipal complaint listing "Failure to Obtain

34

an 'Occupancy Permit' Before New Occupancy Occurred" as the single offense committed by Hansen House).  Plaintiffs openly conceded at the summary judgment stage that "Hansen House— admittedly—was late in obtaining an certification of occupancy for its residents that moved into Serenity House," and that they received the municipal complaint on July 15, 2019, (ECF No. 25-2 at ¶¶ 9-11), despite having been notified of the need for an certification of occupancy by the City months earlier on March 7, 2019.  (ECF No. 26-2 at ¶ 34 and ECF No. 30-3 at ¶ 34).  But more importantly, Plaintiffs have entirely failed to show how any work associated with the municipal court litigation "resulted in work product that was actually utilized in the instant litigation," nor to even try to make such a showing despite it being their burden to demonstrate their entitlement to an award of such fees.

The Court will therefore exclude all hours associated with the municipal court action from Plaintiffs' award.  Defendant has again put together a chart, Exhibit 2, which lists the time entries they assert were related to the municipal court litigation.  The majority of those entries are for work clearly performed for the municipal court proceeding, providing descriptions such as "Prepare correspondence to Mike re: Municipal matters & status" and "Telephone call with Municipal Court re: adjournment."  (ECF No. 42-1, Ex. 2 at 5-6).  The

Court notes that some of the entries listed in this exhibit by Defendant are less clear regarding their nature: for example, the Court is unable to determine on its own whether entries for work described as "Review notice from court; email to client w/notice" or "Prepare correspondence to client w/update re: upcoming appearance" are related to the municipal court proceeding or this action, which was underway at the same time, besides the small hint given by the fact that many of these entries were performed on the same days as work clearly centered on the municipal court action.

But, once again, the initial burden here is on Plaintiffs to demonstrate that they are entitled to an award of these fees. Plaintiffs here chose to submit a large number of billing entries for work their counsel performed for a separate court proceeding, and further chose to not attempt to separate those time entries out for this Court or to provide it some other basis by which it can assess which legal proceeding individual time entries are related to.  In other words, the time entries described here are either clearly of the type that Plaintiffs are not entitled to receive in a fee award, or are so vague and general as to make it impossible for the Court to assess whether they are or are not in that category.  Either way, Plaintiffs have not made a sufficient showing that they are entitled to an award of the fees listed in Defendant's Exhibit 2.  Accordingly,

the Court finds that the entirety of the 10.5 hours billed in the time entries listed in Exhibit 2 must also be excluded, totaling another $3,216 in deductions to the lodestar calculation.

### c. Fees for work unrelated to this litigation

Next, Defendant contends that Plaintiffs are seeking to recover fees for work that is entirely unrelated to this litigation. Even the briefest review of Plaintiffs' submitted time entries reveals this to be true. The Court will briefly cite a few examples.

First, Plaintiffs remarkably appear to be seeking an award of fees for time spent by their counsel talking with a member of the press on an unknown and undescribed subject. See, e.g., ECF No. 37-2 at 19 (seeking fees for work described as "Telephone call with David Danzes/Press of AC"). "[T]he proper forum for litigation is the courtroom, not the media," Halderman v. Pennhurst State Sch. & Hosp., 49 F.3d 939, 942 (3d Cir. 1995), and "[p]laintiffs may not recover fees for an attorney's time spent on media and press coverage unless they can show that it contributed, directly or substantially, to the attainment of Plaintiffs' litigation goals." Americans for Prosperity v. Grewal, No. 3:19-cv-14228-BRM-LHG, 2021 WL 1153194, at *5 (D.N.J. Mar. 26, 2021) (quoting Souryavong v. Lackawanna Cnty., 159 F. Supp. 3d 514, 537 (M.D. Pa. 2016)). As Plaintiffs have

made no effort to put forth such a showing here, it should come as no surprised that the Court will not grant them an award of fees for such activity.

Almost as inexplicably, Defendant's Exhibit 5 shows that Plaintiffs' billing records are replete with time entries that appear to describe legal work related to other Hansen House properties besides Serenity House:  Plaintiffs seek reimbursement of fees for things such as "Telephone call with Jeff Wilson re: 706 No. Ohio," "Review code re: 600ft limitation & applicability to Raleigh," and "Review correspondence from D. Goddard re: Raleigh Ave & co/licensing."  (ECF No. 42-1, Ex. 5 at 18-19).  Similarly, Plaintiffs seek fees for time spent on communications with the "DCA," which based on the summary judgment filings in this case the Court interprets as the non-party Department of Community Affairs, which appear to have involved regulatory and licensing issues.  See id. (time entries for work described as "[p]repare correspondence to Jay Raywood/DCA-c/o issue," "[p]repare correspondence to Raywood," "[p]repare correspondence to Raywood/DCA-permitting," "Telephone call with Raywood re: prior residents to continuation boarding home & triplex v. single & double family," and "[t]elephone call with Jay raywood/DCA").  Plaintiffs have made no attempt to explain to the Court why they believe they are entitled to fees for this work.

Plaintiffs have further sought to recover fees for work such as "Prepare response in connection with motion to dismiss; conduct research in connection w/same," "Review defendants argument in motion to dismiss & review motion to dismiss," "Legal research conduct research re: federal removal; draft summary re: same," and "[p]repare and research motion to remand,", id., despite the fact that no motion to dismiss or motion to remand was ever filed in this action.  And while there are multiple entries discussing work performed on an undescribed settlement agreement, the Court has found no reference to any settlement discussions between the parties in either their briefing on this motion or their briefing on their cross-motions for summary judgment.  See id. (listing time entries described as "Revise document continue to draft settlement agreement," "Prepare correspondence to M. Lentz & team re: settlement agreement," "Telephone clal to client re: settlemen" and "Review settlement agreement").  The Court is unsure whether the time entries described in this paragraph relate to some other litigation Hansen House is involved in, or are work for this action on motions that Plaintiffs ultimately opted not to file and settlement discussions that ultimately failed.  Regardless, the Court is unable to find with sufficient confidence that these time entries describe the sort of work for which Plaintiffs are entitled to receive an award of attorneys' fees.

39

Finally, Plaintiffs seek fees for a number of time entries for work the subject of which this Court simply cannot identify or assess.  The Court is unable to determine whether time entries for work described as "Review Kurtz video & screen shot images for file," "Prepare OPRA Request to AC re: property records," "Prepare correspondence to client w/ parking executed agreement," "Review correspondence from Leo re: agreement," "Review rule regards pursue identifiers," or "Telephone call with and email to Mike Lentz; Jessica witmer RE: Bank financing questions - Class F licenses/fines," amongst others, are related to this litigation, and in many cases is entirely unsure what they are referencing altogether.  Id.  The Court will entirely exclude the fees associated with such unexplained billing entries.

Ultimately, the Court agrees with Defendant that Plaintiffs have not demonstrated their entitlement to a fees award for any of the work described in the time entries compiled in Exhibit 5. The Court will therefore exclude the 28 hours billed to work listed in that exhibit and the corresponding $9,221 in fees requested for those time entries.

### d. Fees for work on summary judgment briefing

Fourth, Defendant asserts that Plaintiffs' fee award should be reduced because "The Time Spent on Summary Judgment Briefing is Excessive and Redundant," (ECF No. 42 at 24), and because

many of the hours they billed were spent working on claims that
were ultimately unsuccessful.  Since the Court must first
calculate Plaintiffs' lodestar before it considers making
reductions based on lack of success, the Court will address
Defendant's second argument in a separate discussion at the end
of this Opinion.

As to the first argument, Defendant specifically challenges
the 77.6 hours billed by counsel for work on Plaintiffs' moving
brief and the 50.1 hours billed on their reply brief, arguing
that these hours should be excluded because Plaintiffs had
already spent a substantial number of hours on research and
drafting related to similar issues in earlier filings in this
litigation.  However, while Plaintiffs' summary judgment
briefing likely overlapped in some ways with earlier filings in
this action, the Court declines to find that Plaintiffs' counsel
having spent slightly less than 78 hours preparing its motion
for summary judgment was so excessive or redundant as to warrant
a downward reduction of fees on that basis alone.  And the Court
similarly declines to find that Plaintiffs' counsel having spent
approximately 51 hours spent preparing a brief that served as
both a reply brief in further support of their own motion for
summary judgment and as a brief opposing Defendant's cross-
motion for summary judgment was excessive here.  Plaintiffs
claims here were not terribly complex, but this action involved

41

at least thirteen separate claims and cross motions for summary
judgment.  While Plaintiffs' counsel may have been capable of
working more efficiently on their briefing, the Court does not
find that the hours they billed were excessive enough to warrant
exclusion or a downward reduction.

### e. Lack of specificity in billing records

Defendant's final specific attack on Plaintiffs' fee
requests is that they are simply too vague and lacking in the
requisite specificity for Defendant or the Court to properly
assess their appropriateness, and therefore the Court should
make reductions to Plaintiffs' fees award.  The Court agrees.

As noted above, Plaintiffs' billing records submitted along
with their motion are not as clear as the Court would desire in
attempting to engage in a thorough, line-by-line analysis in
response to a party's fee application.  They are filed in no
specific order, associated with multiple different matter names
and file numbers, and include a substantial number of entries
that are so vague and so lacking in specific descriptive
language that the Court has little ability to properly analyze
them in adjudicating the present fee application.

Nor have Plaintiffs taken it upon themselves to provide the
Court with anything approaching a summary or breakdown of what
exactly their claimed hours were spent on, instead leaving the
Court and Defendant to comb through 81 pages of billing records

to attempt to piece together what Plaintiffs' counsel billed 324.6 hours doing.  Defendant however, in support of its assertion that Plaintiffs' lodestar should be reduced due to the vagueness of many of their time entries, has provided the Court with a list of examples in Exhibit 6, which includes eleven hours' worth of time entries referencing research, phone calls, and other forms of "correspondence" that are so vague and so general that the Court could not even hazard a guess as to the topic of that research or those conversations.  The Court simply cannot find that these hours were reasonably expended on this litigation, because it cannot determine what they were spent on at all, and Plaintiffs have taken no steps to further illuminate the Court on this topic.

While Defendant requests that the Court apply an across-the-board reduction to Plaintiffs' entire fees request, rather than individually exclude the fees for the time entries they have listed, the Court will decline to do so.  Although the Court itself has been frustrated by Plaintiffs' counsels' oftentimes vague work descriptions, it does not believe that, given Defendant's extremely detailed and pointed opposition brief, it truly hampered Defendant's ability to oppose the present motion.  And, perhaps more importantly, the Court has already rejected a number of other time entries under other categories by noting that they were not sufficiently detailed

43

for the Court to ensure that they did not fall into categories
of billed work that the Court planned to exclude from its final
calculation of Plaintiffs' fee award.  Accordingly, the Court
will simply exclude the 11 hours associated the undeniably vague
time entries outlined in Defendant's Exhibit 6, which correspond
with $4,356 in requested fees that will be excluded.

      3. <u>Plaintiffs' fee award will be reduced due to limited
         success in this action.</u>

The Court therefore has finished its initial lodestar
calculation.  Plaintiffs here submitted fee requests for
$105,159 for 324.6 hours of work billed.  (ECF No. 37-1 at 13).
As outlined above, the Court has analyzed Plaintiffs' billing
entries on a line-by-line basis, with a special focus on the
specific challenges made by Defendant, and has excluded 61.2
hours of work, which corresponds to $21,084 based on the
respective hourly rates of the different attorneys who worked on
this case for Plaintiffs.  The Court therefore finds that
Plaintiffs' counsel reasonably expended 263.4 hours on this
litigation, and based on the respective hourly rates for each
attorney calculates Plaintiffs' lodestar as $84,075.

But that is not the end of the Court's analysis here.
Throughout its opposition brief, Defendant has repeatedly pushed
for another, truly substantial reduction of Plaintiffs' fees
award: Defendant claims that Plaintiffs achieved only a minimal

degree of success in this action, and therefore requests that the Court make a final reduction of 90% to the lodestar.  (See ECF No. 42 at 18, 26, and 34).  Plaintiffs, unsurprisingly, disagree entirely and believe that they "should be awarded the full lodestar figure of attorney's fees."  (ECF No. 37-1 at 14).

Although the lodestar calculation "produces a presumptively reasonable fee, that 'does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward.'"  United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center, 501 F.3d 283, 292 (3d Cir. 2007) (quoting Hensley, 461 U.S. at 434).  Instead, the Supreme Court has explained that when 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate [i.e., the 'lodestar' amount] may be an excessive amount."  Hensley, 461 U.S. at 436.  "In such cases, a reduction in the fee award is warranted, and '[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'"  A.S. ex rel. V.S. v. Colts Neck Bd. of Educ., 190 F. App'x. 140, 143 (3d Cir. 2006) (quoting Hensley, 461 U.S. at 436).

In other words, a district court "may adjust a requested legal fee downward based upon the results obtained by counsel for the prevailing party, particularly 'where a plaintiff is

deemed "prevailing" even though he succeeded on only some of his claims for relief.'" School District of Philadelphia v. Kirsch, 722 F. App'x. 215, 230 (3d Cir. 2018) (quoting Hensley, 461 U.S. at 434). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" D.O., on Behalf of M.O. v. Jackson Twp. Bd. of Ed., No. 17-1581 (TJB), 2019 WL 1923388, at *2 (D.N.J. April 30, 2019) (quoting Farrar, 506 U.S. at 114). Importantly, "[d]istrict courts have wide discretion to determine whether, and by how much, fees should be reduced for lack of success." D'Orazio v. Washington Tp, 501 F. App'x. 185, 188 (3d Cir. 2012). But as the Supreme Court explained in Hensley, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee ... [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Hensley, 461 U.S. at 435.

The Court finds here that while neither side's framing of the outcome of this litigation is entirely accurate, Defendant is correct that a substantial reduction to Plaintiffs' lodestar is warranted in this action. The Court will address the parties' respective arguments on this topic first, before explaining the specific reduction it finds appropriate.

Defendant, obviously seeking the largest possible

reduction, frames Plaintiffs' lawsuit as almost a total loss. It contends that since "Hansen House was only successful on one out of its 9 causes of action," and that because the City promised not to enforce Section 152-1's distance requirement in its October 30, 2019, letter to the Court, Plaintiffs' fee award should be restricted only to time billed prior to October 30 and only to time billed specifically to working on their claims related to Section 152-1. (ECF No. 42 at 17-18). Based on all of this, Defendant believes that a 90% fee reduction would be most appropriate here.

The Court finds multiple issues with Defendant's framing. First, the claim that Plaintiffs were only successful on one out of nine causes of action is simply inaccurate. To start, the Court should note here that while Plaintiffs' Complaint listed nine causes of action, it would be more accurate to say that Plaintiffs pursued thirteen claims in this action: three claims for violation of the ADA, RHA, and FHA related to § 152-1, three claims for violation of the ADA, RHA, and FHA related to § 163-66B, five claims related to Defendant's alleged failure to provide Plaintiffs a reasonable accommodation under the ADA, RHA, FHA, NJLAD, and NJCRA, and claims under 42 U.S.C. § 1983 and the Fourteenth Amendment.

And while Defendant's brief makes clear in multiple places that Defendant read the Court's December 3, 2020, Opinion as

only granting Plaintiffs' FHA claim as to Section 152-1, this is simply a misreading of the Opinion on Defendant's part. Instead, as the Court noted above, the Court began its discussion of Plaintiffs' disparate treatment claims against Section 152-1 under the FHA, RHA, and ADA by pointing out that "[s]ince the requirements of the FHAA, ADA and Rehabilitation Act are essentially the same, courts have concluded that the FHAA analysis can be applied to ADA and Rehabilitation Act claims as well in such cases where claims are brought under all three statutes." (ECF No. 32 at 11) (quoting Yates Real Estate, Inc., 404 F. Supp. 3d at 914).  The Court then proceeded to outline the relevant theories of liability plaintiffs have at their disposal for proving "a violation of the FHA, ADA, or RHA," id. at 12, engaged in a joint analysis of Plaintiffs' disparate treatment claims under all three statutes, and granted summary judgment on all three.  While the Court understands that Defendant may have been confused by the Court's reference to "Section 3613 of the FHAA" alone in the final paragraph of that analysis, id. at 19, that reference was made simply because that provision granted the Court the specific authority to enter a permanent injunction against enforcement of Section 152-1's distance requirement.  The Court's emphasis of the FHAA there served only as an explanation of the statutory authority relied upon by the Court in granting Plaintiffs the specific relief

48

they requested, and was not intended to imply that Plaintiffs'
ADA or RHA claims based on Section 152-1 were denied.

Therefore, the Court's prior Opinion and Order can be more
accurately summarized as having granted Plaintiffs summary
judgment on their three federal disparate treatment claims
related to § 152-1, remanded their NJLAD claim back to state
court for lack of subject matter jurisdiction, and dismissed
their remaining nine claims.  In other words, Plaintiffs
succeeded on three out of thirteen claims, rather than one out
of nine.

Second, Defendant's attempt to cabin Plaintiffs' fee award
to only fees associated with work done prior to Defendant's
filing of its October 30, 2019, letter is entirely unavailing.
The City's argument essentially appears to be that the October
30 letter made clear not only that the City was promising not to
enforce the distance requirement of Section 152-1, but also that
if Plaintiff simply sought a use variance from the City to
operate under a different categorization, that distance
requirement would not apply to them.  To the extent that
Defendant is attempting to make the first argument, it must be
rejected for a very simple reason: this Court has already
rejected this framing of this litigation, and the City's attempt
to use an unenforceable promise to avoid litigation over a
clearly discriminatory regulation, in both its prior Opinion and

49

in finding above that Plaintiffs qualified as prevailing parties.

As to the second argument, while the Court does not necessarily disagree with the letter's framing of the issues in this litigation — which is ultimately rather similar to the Court's later holding that Plaintiffs' failure to have sought a use variance or allowed the City to reach a final decision on Serenity House's proper categorization was fatal to many of their claims — the Court simply does not see how the simple filing of that letter renders the work performed by Plaintiffs' counsel after that date unnecessary or unreasonable here.  This contention is largely parallel to Defendant's attempt, throughout its opposition brief, to frame this lawsuit as having been entirely unsuccessful for Plaintiffs.  But as the Court already explained in its prevailing party analysis, a City employee actively cited the distance requirement of § 152-1, a provision which this Court held was "clear example of explicit discrimination," id. at 17, in ordering Plaintiffs to vacate Serenity House, and then proceeded to oppose Plaintiffs' attempt to obtain a court Order enjoining the City from enforcing it in the future.  The Court simply will not bar Plaintiffs from recovering attorneys' fees that very well may have been incurred working on an important issue that they were successful on simply based on a letter sent by opposing counsel.

The Court therefore disagrees with Defendant that Plaintiffs were so unsuccessful here as to warrant a 90% reduction to their fees or exclusion of all fees incurred after October 30, 2019.  However, it nonetheless agrees with Defendant's more general argument that Plaintiffs were largely unsuccessful in this action and a substantial reduction is warranted.

The Court must next address Plaintiffs' own framing of the outcome of this litigation.  Put most succinctly, the Court simply does not see any basis to accept their assertion that "the central aim of their lawsuit was achieved" here. Plaintiffs contend in their moving brief that "the Verified Complaint contained a single prayer for relief requesting a court order enjoining Defendant from interfering with the operation of Serenity House," and they "succeeded in that regard . . . [and] achieve total victory on the central aim of their suit."  (ECF No. 37-1 at 15-16).  But Plaintiffs' framing of the outcome of this litigation runs into multiple clear problems.

First, the Court must restate that its review of Plaintiffs' Complaint and their motion for summary judgment makes clear that Plaintiffs essentially asserted thirteen claims here, and succeeded on only three out of those thirteen claims — put another way, Plaintiffs were unsuccessful on approximately 77% of the claims they pursued in this action.  And as the Court

outlined above, the Third Circuit has made clear that "an attorney's work on unsuccessful claims not related to the claims on which the attorney succeeded is not compensable, because such work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (quoting Hensley, 461 U.S. at 434-35). In fact, the Third Circuit has emphasized that "the District Court has a positive and affirmative function in the fee fixing process, not merely a passive role" and "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 178 (3d Cir. 2001).

However, a district court's decision whether to reduce fees in this manner "depends upon whether the unsuccessful claims were, in fact, distinct," because the Supreme Court's precedent on this issue "cautions that courts should not reduce fees simply because some of a prevailing party's related claims are unsuccessful." McKenna, 582 F.3d at 457 (citing Hensley, 461 U.S. at 434-35). "[W]here a plaintiff's claims involve 'a common core of facts' or are based on 'related legal theories, ... [m]uch of counsel's time will be devoted generally to the

52

litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" Id. (quoting Hensley, 461 U.S. at 435).  But "where a party brings claims that do not depend on the same sets of facts and legal theories as the claims on which the party has succeeded, fees should not be awarded for work on those unrelated claims because the work 'cannot be deemed to have been expended in pursuit of the ultimate result achieved.'" Id. (quoting Hensley, 461 U.S. at 435).

As described above, the Court granted Plaintiffs summary judgment on their claims that § 152-1 violated the ADA, RHA, and FHA due to its disparate treatment of individuals with disabilities, but granted Defendant summary judgment as to all other claims but one and dismissed those claims.  Those additional claims included allegations that City Code § 163-66B also violated the ADA, RHA, and FHA based on its disparate impact on individuals with disabilities, that the City had violated those three federal statutes as well as the NJCRA and the NJLAD due to its failure to provide Plaintiffs with a reasonable accommodation and its actions in the dispute leading up to this litigation, and that its actions further qualified as violations of § 1983 and the Fourteenth Amendment's protections for substantive due process.  Plaintiffs did not succeed on any of those additional claims in this action.

Plaintiffs, for the most part, have failed to do anything more than put forward the conclusory assertion that their other claims were all so sufficiently connected and interrelated to make a reduction unwarranted here, and make almost no attempt to present an actual argument as to why this is the case.  But despite Plaintiffs' failure to raise a strong defense of their fees request, the Court itself recognizes that there is at least a plausible argument here that the claims were somewhat related and involved something approaching a "common core of facts." The general legal theory here, for all of Plaintiffs' claims, was that the City's zoning laws and actions taken in its dispute with Hansen House were all discriminatory, and the background facts of that dispute do exist as the general underpinning of Plaintiffs' entire lawsuit.

However, as Defendant persuasively argues, adjudication of Plaintiffs' disparate treatment claims attacking § 152-1 ultimately required nothing more than a discrete, purely legal analysis — the Court simply rejected Defendant's mootness argument, and then went on to reach a simple holding: § 152-1 was, on its face, "a clear example of explicit discrimination," because it facially applied only to individuals with disabilities and the City had made no attempt to put forth a nondiscriminatory justification.  (ECF No. 32 at 17).

The Court's analysis of Plaintiffs' other claims, on the

other hand, involved detailed discussion of the factual
background referenced above, including which actions the parties
took at different times over the course of the spring and summer
of 2019, and largely focused on questions of ripeness and
whether any final decision had been made by the City regarding
Serenity House's categorization under the City Code, neither of
which were arguments that were relevant to Plaintiffs' claims
against § 152-1.  Similarly, Defendant did not raise the single
argument it raised in opposition to the claims against § 152-1,
that the claims were moot, as a basis for dismissal of any other
claims, and the Court's analysis of Plaintiffs' successful and
unsuccessful does not appear to have ultimately overlapped at
all.

    The only attempt Plaintiffs even make to prove that this
was not the case is to point the Court to the parties'
contradictory recollections of Hansen House's August 16, 2019,
meeting with City officials, and to assert that "it is beyond
dispute that Defendant advised Serenity House to pursue such a
designation while this suit was pending."  (ECF No. 37-1 at 16).
But Plaintiffs fail to explain how exactly they believe this
proves that each of their claims involved a "common core of
facts" and "related legal theories" such that this Court is
incapable of separating out the time spent by their counsel
litigating this matter.

However, the Court does not view these claims as being completely walled off from each other.  First, while the Court's analysis of Plaintiffs' claims against § 152-1 was purely legal in nature, it must be noted that Plaintiffs had also raised disparate impact claims attacking that provision that likely would have required essentially identical analysis as their disparate impact claims attacking § 163-66B; the Court simply found it unnecessary to address that theory of liability because it had already found that a permanent injunction was warranted by its finding that § 152-1 was facially discriminatory. Second, while Plaintiffs' reasonable accommodation claims were ultimately dismissed on ripeness grounds and for failure to allow the city to reach a final decision on Serenity House's proper categorization under the City Code, the Court has little trouble imagining how the facts regarding the City's attempts to enforce or refer to the distance requirement of § 152-1 could have come into play had Plaintiffs' claims progressed further.

However, while it was certainly possible that Plaintiffs' reasonable accommodations claims could have ultimately involved consideration of facts that were technically related to Plaintiffs' successful disparate treatment claims against § 152-1, the legal theories were ultimately largely unrelated and involved different bases for liability.  And, perhaps most importantly, the Court finds that at least some consideration of

these failed claims in fashioning a reduction to their lodestar
is highly appropriate for one simple reason: Plaintiffs' own
actions were the cause of the dismissal of most of their claims.

The Court here rejected eight of Plaintiffs' thirteen
theories for liability under six separate statutes and a
constitutional provision; those dismissals were all based in one
way or another on either Plaintiffs' failure to pursue a zoning
variance despite clear case law requiring them to do so before
pursuing claims under the ADA, FHA, and RHA, or Plaintiffs'
failure to ensure they had given the City the opportunity to
reach a final decision regarding its view of Serenity House's
proper categorization under the City's zoning laws.  As
Defendant aptly frames it, Plaintiffs here (1) began operation
of Serenity House without even attempting to seek City approval
to do so, (2) decided to seek a shortcut through the system for
receiving City approval by rushing to federal court without
making a true attempt to abide by the City's procedures for
ensuring compliance with the City Code and zoning laws, and (3)
had their claims dismissed for having done so.  With that all
established, they now "now seek[] a windfall from the City
precisely because they wished to play by their own rules despite
the well-developed body of case law establishing the importance
of going through the process."  (ECF No. 42 at 17).

For this reason, the Court declines to allow the mere

theoretical possibility that Plaintiffs' unsuccessful reasonable
accommodations claims, as well as their unsuccessful § 1983 and
substantive due process claims, could have at some future point
addressed facts that were related to their successful claims
help them avoid reductions to their fee award.  But the Court
agrees with Plaintiffs that there was at least some level of
overlap between their claims, and that therefore a full
reduction that corresponds with the specific number of failed
claims is not warranted.

Ultimately, the Court concludes that rather than making a
specific reduction based purely on the number of unsuccessful
claims here, it will instead factor these unsuccessful claims
into its decision-making on the size of the final reduction it
chooses to apply to Plaintiffs' lodestar amount for overall lack
of success in this action.  As courts in this Circuit have
noted, even "where the successful and unsuccessful claims
'involve a common core of facts' [and] the lawsuit 'cannot be
viewed as a series of discrete claims'" a district court should
still "focus on the significance of the overall relief obtained"
and make reductions accordingly.  I.W. v. School District of
Philadelphia, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016)
(quoting Hensley, 461 U.S. at 435).

The Court will take this path for several reasons.  First,
it would be extremely difficult for the Court to determine with

any great level of confidence exactly which percentage of Plaintiffs' hours expended on this litigation were dedicated to which claims, given (1) the murky dividing line between some of Plaintiffs' claims here, and (2) the fact that Defendant's own chart outlining time entries it claims are for time purely spent on Plaintiffs' unsuccessful claims includes a number of time entries that the Court simply does not believe it could plausibly separate out as having been purely focused on unsuccessful claims.[2]  (ECF No. 42-1, Ex. 3 at 8-9).

Second, while Defendant argues for a reduction that appears to be tied simply to the ratio of Plaintiffs' successful claims to total claims, the Court recognizes that this Circuit's case

---

[2] As mentioned earlier in this Opinion, Defendant also argues in its opposition brief that Plaintiffs' reply brief at the summary judgment stage was entirely focused on their unsuccessful claims, and therefore all time billed to working on that motion should be excluded.  This argument appears to be based on a misreading of a line from the Court's December 3, 2020 Opinion. In that Opinion, the Court stated that "in their reply brief, Plaintiffs focus their entire rebuttal on the argument that they are not required to have waited until a final decision was issued, as any further involvement with the City and the Zoning Board's process would have been futile."  (ECF No. 32 at 36). But the Court's statement there was not meant as a summary of the entirety of Plaintiffs' reply brief; rather, viewed in the context of the surrounding pages and discussion, it merely described the singular argument Plaintiffs had put forward to rebut Defendant's contention that certain of their claims were not ripe because the City had not issued a final decision on Serenity House's status under the City Code.  That statement was not intended to characterize Plaintiffs' entire brief.  In fact, Plaintiffs' reply brief included an entire section supporting their ultimately successful claims attacking § 152-1.  (See ECF No. 30 at 17-20).

law has made clear that while such ratios are a good starting point, doing nothing more than "mathematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic.'" McCutcheon v. America's Servicing Co., 560 F.3d 143, 151 (3d Cir. 2009) (quoting W. Va. Univ. Hosps., Inc. v. Casey, 898 F.2d 357, 363 (3d Cir. 1990)); see also Damian J. v. School District of Philadelphia, 258 F. App'x. 333 (3d Cir. 2009) (affirming district court's rejection of defendant's request to reduce lodestar by 75% because plaintiff prevailed on only one of four claims).  Accordingly, the Court will first assess what reductions are appropriate here for Plaintiffs' overall level of success in this litigation, and then adjust that number as necessary based on the fact that, their concrete goals aside, Plaintiffs failed on most of claims they pursued against Defendant.

Defendant here has strenuously argued that Plaintiffs' overall relief obtained was insignificant enough to justify even further reductions.  The Court once again agrees.  While Plaintiffs' assert that they "achieved total victory on the central aim of their suit," (ECF No. 37-1 at 15-16), the Court finds that it simply has no basis for agreeing with that view of this litigation.  Instead, it seems highly likely here that while Plaintiffs did accomplish one goal, they largely failed to achieve their actual "central aim" in this litigation.

As referenced above, Plaintiffs' Complaint sought a series
of orders from the Court enjoining the City and its officials
and employees from interfering with Plaintiffs' operation of
Serenity House on any basis.  The Court simply did not issue
such an Order.  The injunction issued by this Court did one
thing and one thing only: it permanently enjoined the City from
enforcing the distance requirement of § 152-1.  It made no other
reference to the City's ability or legal right to block the
operation of Serenity House, to take steps to force Plaintiffs
to cease their operations there, or to enforce any other
provision or restriction of the City Code against Plaintiffs and
Serenity House if Plaintiffs' operation of Serenity House
continued to be in noncompliance with the City Code and zoning
regulations.

Plaintiffs, in briefly attempting to demonstrate that their
central aim truly was accomplished, argue that they "succeeded
in 'defeating' the sole basis for Defendant's denial of Serenity
House's application for a CLUC, i.e., Section 152-1's mandatory
distance requirement."  (ECF No. 37-1 at 15).  Plaintiffs are
admittedly correct that § 152-1 played a real role in the
parties' initial dispute.  First, the initial order to vacate
that was issued to Serenity House referenced § 152-1 as one of
its bases, along with the fact that Plaintiffs still had not
obtained an certification of occupancy as required by the City

Code, and the property remained subject to a stop construction
order that had been issued two weeks earlier: the order
specifically cited both "the pattern of disregard for cod
requirements . . . and the absolute prohibition against a
community residence at this specific location" under § 152-1 as
the reasons for why Plaintiffs were being directed to vacate
Serenity House.  (ECF No. 1-1, Ex. J).  And § 152-1's distance
requirement was again referenced in the City's denial of
Plaintiffs' CLUC application.

But while § 152-1 clearly was involved or referenced in
some way in the meeting in the August 16, 2019, meeting in which
Plaintiffs were provided their denied CLUC application,
Plaintiffs simply have not proven in this action that § 152-1
was the "sole basis" for the denial of their CLUC application.
Instead, the Court made clear that this was a point of real
factual dispute that it was not wading into at the summary
judgment stage, and noted that the copy of the CLUC application
denial which Plaintiffs themselves submitted as an exhibit
specifically included notes regarding additional deficiencies in
the information included in the application, although it is
unclear when exactly those notes were added.  In other words,
while § 152-1 certainly played a real and not insignificant role
in Plaintiffs' dispute with the City, they have never actually
proven in this action that it was the "sole basis" for any steps

taken by the City or for Plaintiffs' failure to obtain the
requisite permits or certifications to bring their operation of
Serenity House into compliance with the City Code.

In fact, Plaintiffs have not even actually contended in
their present motion that they are currently able to operate
Serenity House without concern that the City may again attempt
to shut them down or force them to vacate the property.  When
the Court issued its prior Opinion and Order in December 2020,
it was undisputed that Plaintiffs still had not obtained a
certification of occupancy for Serenity House, despite having
been first informed they needed one prior to moving individuals
onto the property in March 2019 — in fact, in the parties'
summary judgment briefs, they appeared to still be fighting over
whether receiving a CLUC, which Plaintiffs have also never
obtained, was a prerequisite for them to receive a certification
of occupancy under the City Code.  (See, e.g., ECF No. 30 at 9
n.3).

In other words, the clear record showed at that stage that
although the City had not actually forced Plaintiffs to shut
down Serenity House or vacate the property, they were considered
to be violating the City Code through their activities at that
property and their attempts to ensure they were in compliance
had so far all been denied or otherwise failed.  And the Court's
Opinion made it clear that this was its understanding of the

63

contemporary situation at that point in time.  That Opinion
specifically noted in dismissing many of Plaintiffs' claims both
that "the Zoning Board has never issued a final decision
regarding the proper application of the City's zoning
regulations to the Serenity House," and that despite a lack of
briefing as to the next proper steps for Plaintiffs to take,

> "the Court assumes that Plaintiffs continue to have
> available avenues for receiving approval for
> Serenity House to operate in the manner they
> desire" — and went on to point out that even if
> Plaintiffs were in fact unable to further pursue a
> CLUC or further appeals regarding Serenity House's
> status, the fact that their claims may not be
> "simply 'premature,' but rather never will ripen,
> does not affect the disposition of this case on the
> basis of the finality rule."

(ECF No. 32 at 36, 36 n.4 (quoting New Jersey Chinese Community
Center v. Township of Warren, 712 F. App'x. 196, 199 n.5 (3d
Cir. 2017)).

Plaintiffs have made no attempt to dispel the Court of this
notion in their fee application, nor to put forth evidence
sufficient to demonstrate that the situation has since changed,
or that they are now considered to be in compliance with the
City Code and that this litigation has given them a legal right
to operate in the way they wish to operate free from the City's
interference.  The Court therefore is left to conclude that the
underlying dispute between Plaintiffs and the City remains
ongoing, despite the permanent injunction against enforcement of

§ 152-1's distance requirement.  While Plaintiffs undoubtedly achieved one of their discrete goals, given their failure to achieve the true aim of their lawsuit the Court simply cannot find that Plaintiffs' counsel achieved "excellent results" here.

As mentioned above, Plaintiffs' apparent failure to achieve their central goal here, and some large percentage of the fees incurred by both sides in litigating their unsuccessful claims, was caused entirely by Plaintiffs' own attempt to find a shortcut through the municipal administrative process that this Circuit's clear precedent required them to first navigate. While the Court has found that Plaintiffs' success in invalidating § 152-1 entitles them to an award of fees and costs here, the Court will not grant them the windfall they seek or reward them for their actions in pursuing their other claims without first ensuring they were properly situated and ripe for adjudication in federal court.

From the Court's view of this litigation, it appears that it can only state with any confidence that Plaintiffs have achieved one of their three goals here: (1) invalidating § 152-1, (2) invalidating § 163-66B, and (3) ensuring that the City, either through a reasonable accommodation in the form of a use variance or through some other means, is legally barred from attempting to interfere with their operation of Serenity House. Plaintiffs therefore failed on approximately 66% of their goals

65

in initiating this lawsuit; given the fact that goal three was undoubtedly the central one, the Court finds it fair to raise that percentage to 75%.

The Court next sees two additional considerations as sitting in almost direct balance to each other: (1) the fact that Plaintiffs did achieve an unquestionably important result in ensuring that the City can never again enforce a clearly discriminatory zoning provision against them or any other party, after having it wielded as a weapon against them in this very dispute; and (2) the fact that Plaintiffs ultimately had eight theories of liability rejected in this action due to their own impatience and actions. The Court, after having considered these countervailing factors, finds that Plaintiffs' success in invalidating the discriminatory distance requirement of § 152-1 slightly outweighs the sheer number of failed claims here, and will accordingly lower the reduction percentage from 75% to 70%.

The Court has therefore determined that a 70% total reduction to Plaintiffs' lodestar is warranted here based on Plaintiffs' lack of success in this action. A reduction of this level for lack of success is comfortably within the range of reductions that the Third Circuit has affirmed in previous cases. See, e.g., C.G. v. Winslow Township Board of Education, 704 F. App'x. 179, 181-82 (3d Cir. 2017) (affirming district court's reduction of lodestar by 50% due to limited success);

Spencer v. Wal-Mart Stores, 469 F.3d 311, 317-18 (3d Cir. 2006) (affirming 75% reduction to fees based upon limited success); Colts Neck Bd. of Educ., 190 F. App'x. at 143-44 (affirming district court's 80% reduction to lodestar due to limited success); Veneziano v. Long Island Pipe Fabrication & Supply, 379 F. App'x. 506, 511 (3d Cir. 2002) (affirming 50% reduction to lodestar due to limited success).

The Court had previously calculated Plaintiffs' lodestar at $84,075.  Accordingly, after applying a final reduction of 70% and adding in Plaintiffs' requested fees,[3] the Court finds that Plaintiffs are entitled to an award of fees and costs in the total amount of $25,646.78.

<u>**CONCLUSION**</u>

For the reasons expressed above, Plaintiffs' motion for attorneys' fees (ECF No. 37) be granted in part and denied in part, and Defendant will be ordered to reimburse Plaintiffs in the amount of $25,646.78.

An appropriate Order will be entered.


Date: August 19, 2021                /s Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

[3] Defendant has not opposed Plaintiffs' application for $424.28 in costs, and the Court finds that Plaintiffs have sufficiently demonstrated their entitlement to those costs here.